Gene **STIPE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 7649.

United States Court of Appeals Tenth Circuit.

Oct. 28, 1964.

Curtis P. Harris, Oklahoma City, Okl., for appellant.

Elizabeth Dudley, Attorney, Dept. of Justice, Washington, D. C. (Ramsey Clark, Asst. Atty. Gen., Washington, D. C., Edwin Langley, U. S. Atty., Muskogee, Okl., and Roger P. Marquis, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before PHILLIPS, PICKETT and SETH, Circuit Judges.

PICKETT, Circuit Judge.

The United States brought two condemnation actions to acquire land for the purpose of flood control on the Canadian River in Oklahoma, and for the construction and operation of the Eufaula Dam and Reservoir. Prior to the condemnation proceedings, U. S. Highway 69 and State Highway 9 approached the town of Eufaula from the south, using the same right of way. The appellant Stipe owned 6.04 acres of land east of this right of way, and 24 acres on the west side.[1] The project required the relocation of U. S. Highway 69 and a strip of land through the 24 acre tract was taken for a right of way. State Highway 9 remained on the original right of way. A condemnation action for the acquisition of the right of way across the 24 acre tract was filed July 26, 1960. By a second proceeding filed June 22, 1962, the United States condemned .15 acres on the northwest corner of the 6 acre tract to be used for construction purposes and for an access ramp to Stipe's property. This latter action also condemned a small portion at the north end of the 24 acre tract in extending the new right of way. As authorized by Rule 71A, F.R.Civ.P., the court referred the two cases to a commission for the purpose of assessing damages resulting from the taking in each case. After consolidating the two cases for trial, the commission awarded total damages in the sum of $5,035.50. This is an appeal from a judgment adopting the award of the commission.

Stipe owned and operated a popular truck stop, gasoline supply station and restaurant on the property east of the highway. Prior to the relocation of

---

1. The 6.04 acre tract, which was purchased by Stipe in 1955 for $3,000, abutted the old highway for 608 feet. The 24 acre irregular tract was purchased by him in 1958 for $2,900. This tract had some frontage on the west side of the highway immediately northwest of the 6.04 acre tract.

Highway 69, all traffic using the old highway had convenient access to Stipe's business. The relocated Highway 69 was about 200 feet west of the truck stop, with State Highway 9 in between. The new highway was elevated about 11 feet higher than the old.[2] Access to Stipe's business at the south end remained the same, but the old road was elevated at the north to permit entrance onto U. S. Highway 69. An access ramp was provided from this grade at the northwest corner of the business property, but it was difficult for large trucks to maneuver off the highway and enter the station. In connection with this ramp, a cross-over was provided to relocated U. S. Highway 69.

Most of the truck business at the station originated from travel on U. S. Highway 69. The evidence is undisputed that after the relocation of that highway, Stipe's station would lose most of this business.[3] Stipe testified that prior to the relocation of U. S. Highway 69, his net profit from the business over a period of five years averaged in excess of $10,000 a year. Using this income as a basis for valuation, the witnesses called by Stipe appraised the property as a unit to be of the value of approximately $80,000. They also testified that in their opinion some of the west tract was essential to the operation of the business, and that the relocation of Highway 69 and raising the grade on Highway 9 decreased the value of the property by 40%. Witnesses for the United States were of the view that none of the 24 acre tract contributed anything to the business, and in fixing damages considered only the value of the land taken, giving no consideration to the loss of business resulting from the taking or the construction of the roads thereon. The commission, after viewing the premises, found that a large portion of the business at Stipe's operation originated from traffic on Highway 69; that the land west of the highway was not necessary or essential to the operation of his business, and in assessing damages, the tracts should be considered separately; and that the damage to the business " * * * will come primarily from the relocation of United States highway 69, which is the source of the

2. U. S. Highway 69, as relocated, is a four-lane limited access road which bypasses the Stipe property a considerable distance to the west. The portion of this highway for which the right of way was taken over the 24 acre tract is a relocation of the alternate route to the business section of Eufaula.

3. A real estate broker who testified for the landowner as to damages, gave the following testimony:
"Q. Do you know about the change in grade elevation? A. Yes, sir.
"Q. Do you think that will affect his property? A. I am sure it will.
"Q. Have you taken that into consideration? A. Yes, Sir.
"Q. To what extent? A. I think that the over all grade, the changing of the grade, will destroy the value of the property.
"Q. Is that what it will do, destroy it? A. Yes, sir.
"Q. That is the principle thing in your opinion that reduces the value of this property, isn't it? A. No. The very fact that it is taking that land to facilitate the raising of that highway through there.

"Q. Well, you know that new 69 is going into Eufaula, is going to by-pass their property, don't you? Have you been so advised by Mr. Stipe or others? A. I know that new 69 is going to by-pass Eufaula.
"Q. Well, you know the business route, the new business route of 69 is going to by-pass the Stipe property too, isn't it? A. It will be further removed than it is now.
"Q. Well, it is going to be inaccessible so far as any real use by the traveling public, isn't it? A. I am not familiar with the engineering on it. I have heard a half dozen different stories on it.
"Q. Didn't you make inquiry? A. Yes. And none of them were able to tell me.
"Q. Did you talk to Mr. Stipe? A. Yes, sir. And he doesn't know.
"Q. Do you think it is going to reduce the traffic in front of his business? A. I think it is going to stop practically all of it.
"Q. Wouldn't that have a substantial affect on his business? A. I think it would destroy his business."

heavy traffic that comprises the bulk of the business involved."

Two questions are presented here: (1) Did the commission err in not considering the tracts owned by Stipe as a unit, and (2) was the loss of business which resulted in a deterioration of the value of plaintiff's property compensable?

■■■■ There was a sharp conflict in the evidence as to the extent and necessity of the use of the property west of the highway in connection with plaintiff's business. This was a question of fact to be resolved by the commission. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211. It found that a small portion of that property might be used for parking, but was not necessary to or actually a part of Stipe's operation. That finding, which prompted refusal to consider Stipe's properties as a unit, is supported by the record and is not clearly erroneous. It will not be disturbed on appeal. United States v. Merz, 10 Cir., 306 F.2d 39, rev. on other grounds 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629; Rapid Transit Co. v. United States, 10 Cir., 295 F.2d 465, cert. denied 369 U.S. 819, 82 S.Ct. 831, 7 L.Ed.2d 785; Buena Vista Homes, Inc. v. United States, 10 Cir., 281 F.2d 476.

■■■■ The rule is that when there is a taking of part of a tract of land, just compensation shall include damages to the remaining land caused by the taking. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162; United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165. Accordingly, Stipe urges that the decrease in the market value of his property was caused by the condemnation of only part of his land. However, the evidence establishes that none of the property upon which the business was located, or at least none that materially affected the business, was taken. Although perhaps not as desirable or convenient as it was before, access was provided to the relocated and changed highways. The record as a whole discloses beyond any doubt that the decrease in the value of the business resulted not from the taking of part of Stipe's land, but from the relocation of Highway 69, which diverted traffic over the highway away from the business operation. Whatever his loss, it is due to the destruction or frustration of his business, and not the taking of the property. Such losses are not compensable. United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729, rehearing denied 327 U.S. 818, 66 S.Ct. 813, 90 L.Ed. 1040; United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 [4]; Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; Om-

4. In United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 281–283, 63 S.Ct. 1047, 1055–1056, the court said:

"This public project, to be sure, has frustrated respondent's plan for the exploitation of its power of eminent domain. We may assume that that privilege was a thing of value and that this frustration of the plan means a loss to respondent. But our denial of compensation for that loss does not make this an exceptional case in the law of eminent domain. There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment. The point is well illustrated by two other lines of cases in this field. It is a well settled rule that while it is the owner's loss, not the taker's gain, which is the measure of compensation for the prop-

erty taken (United States v. Miller, supra; [317 U.S. 369, 63 S.Ct. 276]; United States v. Chandler-Dunbar [Water Power] Co., supra, 229 U.S. [53] page 81, 33 S.Ct. [667] page 678, 57 L.Ed. 1063; Boston Chamber of Commerce v. Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725), not all losses suffered by the owner are compensable under the Fifth Amendment. In absence of a statutory mandate (United States v. Miller, supra, 317 U.S. p. 376, 63 S.Ct. [276] 281, 87 L.Ed. 336) the sovereign must pay only for what it takes, not for opportunities which the owner may lose. See Orgel, Valuation Under Eminent Domain (1936) § 71, § 73. On the one hand are such cases as Monongahela Navigation Co. v. United States, supra, [148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463], where it was held that the United States had appropriated a going enter-

**822**

nia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773; Sauer v. New York, 206 U.S. 536, 27 S. Ct. 686, 51 L.Ed. 1176; Winn v. United States, 9 Cir., 272 F.2d 282. The nature of the loss here would have been no different if the relocated Highway 69 had not required the taking of any of Stipe's property.

Affirmed.

prise to its own ends and must make compensation accordingly. But it is well settled in this Court that, 'Frustration and appropriation are essentially different things.' Omnia Commercial Co. v. United States, supra, 261 U.S. [502] p. 513, 43 S.Ct. [437] page 439, 67 L.Ed. 773. Thus in Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, the owner was denied compensation for the destruction of his business which resulted from the taking of his land for a public project even though the business could not be reestablished elsewhere. This Court, after noting that 'settled rules of law' precluded a consideration of 'consequential damages' for losses of a business or its destruction, stated: 'No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the Government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land.' 267 U.S. page 345, 45 S.Ct. [293] page 294, 69 L.Ed. 644. That which is not 'private property' within the meaning of the Fifth Amendment likewise may be a thing of value which is destroyed or impaired by the taking of lands by the United States. But like the business destroyed but not 'taken' in the Mitchell case it need not be reflected in the award due the landowner unless Congress so provides." (Footnotes omitted.)