Wendell S. **WILSON** and Mary Ellen R. Wilson, his wife, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 7867.

United States Court of Appeals Tenth Circuit.

Sept. 1, 1965.

Clifford L. Ashton, Salt Lake City, Utah (Payson W. Spaulding, Evanston, Wyo., and Clifford L. Ashton, Salt Lake City, Utah, on brief), for appellants.

George R. Hyde, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen. of the United States, Robert N. Chaffin, U. S. Atty. for the District of Wyoming, and S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and TEMPLAR, District Judge.

TEMPLAR, District Judge.

A condemnation proceeding was instituted by the United States of America at the request of the Solicitor for the Department of the Interior for the taking of land under the power of eminent domain for use in connection with the construction, operation and maintenance of Flaming Gorge Reservoir, Colorado River Storage Project, the lands being allegedly required for the immediate use of the Bureau of Reclamation.

The interest in the lands sought to be acquired was a fee simple title excepting and reserving therefrom gas and oil which may be prospected for and removed under regulations imposed by the Secretary of the Interior and reserving the right of ingress and egress over parts of Parcels 8 and 40 which were not hereafter designated for recreational use, to water livestock in the reservoir created.

Parcel No. 40 is a tract of 194.01 acres and Parcel 8 is a tract of 973.13 acres, both were described in the complaint by the survey plat description together with appurtenances which included a water right amounting to 1.89 c. f. s. from Current Creek through the Frank Tow and Holmes ditch. Appellants are the owners of the land sought to be acquired.

To the pleading of the United States, landowners filed their objections and answers, alleging that:

"The lands described (Parcels 40 and 8) are part of a ranch property operated by [landowners] including in addition to the lands described * * * as parcel 8 approximately 14,195 acres of deeded lands * * * described as the 'Bosler purchases'.

"That said lands, including * * Parcel 40 and * * * 'Holmes purchases', constitute, comprise and are an economical and compact livestock raising ranch, well balanced as to arable, forage and grazing lands and are adapted to and adequate for year round operations.

"Approximately 960 acres of land of said Parcels 8 and 40 are arable and have appurtenant thereto permanent water rights sufficient for their irrigation and produce or are capable of producing hay, feed and forage for winter feeding of the livestock run on said ranching property up to 2100 head of cattle and 200 head of horses for a year round operation. Approximately 834 of said 960 acres are included in Parcel 8 and the balance thereof are included in Parcel 30, and the present fair

value of said 834 acres is $120 per acre or $100,080.00. That the present fair value of the remaining lands in Parcel 8, approximately 139 acres, is $15 per acre or $2,085.00, and the present fair value of the 194.01 acres of Parcel 40 is $21,000.00.

"Said ranch property is so situated that there are no other lands which can be obtained to replace the arable lands thereof and there is no convenient or economical way of replacing the feed crops and forage thereon and thereby utilizing said 14,145 acres for range purposes to full capacity and the value of said 14,145 acres remaining will thereby and on account thereof be reduced not less than five dollars per acre to [landowners'] damage in the sum of $70,625.00."

The government demanded a jury trial but the trial court, under the provisions of F.R.Civ.P. 71A(h), appointed a Commission to determine the issue of just compensation, and instructed it on its duties, responsibilities and the principles of law under which it should determine just compensation. The Commission convened, heard the evidence submitted by the parties, and filed its report. The report discloses the following determination of compensation awarded the landowners:

"Wherefore we, the Commissioners, pursuant to the Instructions of the Court, find the fair and true market value of the property, as follows:

| | | |
|---|---|---|
| 66 acres Irrigated at $150.00 per acre | | $ 9,900.00 |
| 61 acres Arable, with water rights at $35.00 per acre | | 2,135.00 |
| 769 acres Arable, with water rights pending at $35.00 per acre | | 26,915.00 |
| 204 acres, grazing at $20.00 per acre | | 4,080.00 |
| 67 acres west of River, grazing at $10.00 | | 670.00 |
| Total Value of Lands Taken | | 43,700.00 |
| Severance damage to balance of land not taken | | 25,461.00 |
| TOTAL | | $69,161.00" |

No objection is raised or exception taken to the form and content of the report. The principle objection of the landowner is that the findings of the commission are not supported by and are contrary to the evidence.

After the commissioners' report was filed, the district judge entered a final judgment approving the findings. Landowners then filed a motion for a new trial. The district judge treated the motion for a new trial as objections to the findings of the commissioners. He stated, in his order overruling the motion for a new trial that he had reviewed the commission proceedings and that he had heard argument on the law and evidence. He found no merit to the appellants' objections to the recreational use of the property, to the provision for watering livestock, or to the provisions for prospecting for oil and gas. He found that the evidence and exhibits entered in this case upon which the commissioners based their findings provided a sound basis for their findings and conclusions and that none of the instructions objected to by the appellants prejudicially affected the substantial rights of the landowners. This appeal followed.

This brings into focus the question of whether the commission heard and considered sufficient evidence in order that its members, as reasonable men confronted with the necessity of acting in a matter of like importance to themselves, could make a reliable decision on the issue it was necessary for them to deter-

mine—that is, the amount of just compensation to be allowed the landowners for the property taken by the government?

The landowners contend that the witnesses of the government based their testimony as to values on inaccurate standards of comparable sales; that they assumed a sale price on a tract, referred to in the evidence as the Holmes place, to be $14,000 when undisputed evidence disclosed that the actual sales price was $20,000. Landowners further contend that the commission in making its award, substantially adopted the mistakenly grounded opinion evidence offered by the government's witnesses and followed it almost to the letter in making the award. Landowners also insist that government witnesses appraised the property taken on a piecemeal basis and not as a whole. However, an examination of the record discloses that the witness Virden testified that the value of the whole property —15,312.26 acres—before the taking was $352,000; that the value of the remaining property after the taking consisting of 14,145.12 acres was $296,000, and that the difference was $56,000. He stated the different comparable sales which he took into consideration in forming his opinion of values and was vigorously cross-examined. Likewise, the witness Englehorn testified to several sales of land which he considered comparable as a basis in forming an opinion of the value of the Wilson land. His "before value" was $354,000 and the "after value" was estimated at $286,000, a difference of $68,000. Each of the three appraisal witnesses of the landowner estimated just compensation to be in excess of $138,000. It is true that the witnesses in presenting testimony used a breakdown by soil types and location and that in explaining the process by which they arrived at their opinions, they disclosed valuations of separate parts of the land in terms of how much these contributed to the value of the whole, not as separate, unrelated entities. There is nothing improper about this procedure. Expert witnesses must be allowed to explain their qualifications as experts and the reasoning by which they have arrived at an opinion to which they testify. Unless they may state the grounds for these opinions, their testimony would be of little value.[1]

The award of the commission was within the range of sharply conflicting evidence. A larger award could have found support from the evidence but it was the function of the commission to hear the evidence and make the findings its members were persuaded to believe were proper. The trial court determined that the evidence in the record provided a sound basis for the findings and conclusions reached by the commission and overruled the landowners' objections that the award was inadequate.

After reviewing the record of evidence on valuation, this court cannot say that the trial court committed reversible error in so concluding. On the contrary, findings of a commission in a condemnation case shall be accepted by a trial court unless they are clearly erroneous.[2] This court will not retry the facts and a finding based on sharply conflicting evidence is conclusively binding here.[3]

The landowners, among other objections raised and presented, contend that:

(a) The government seeks to condemn more land than was necessary for reservoir purposes.

(b) The complaint does not adequately and realistically describe the land which can properly be taken.

1. United States v. 25.406 Acres of Land, Etc., in Arlington County, 4 Cir., 1949, 172 F.2d 990, ·993, cert. den. 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738.

2. United States v. Waymire, 10 Cir., 1953, 202 F.2d 550, 553.

3. Buena Vista Homes, Inc. v. United States, 10 Cir., 1960, 281 F.2d 476, 480, and Stipe v. United States, 10 Cir., 1964, 337 F.2d 818. Cf. United States v. Tampa Bay Garden Apartments, Inc., 5 Cir., 1961, 294 F.2d 598 and United States v. Certain Interests In Property, Etc., 4 Cir., 1961, 296 F.2d 264.

(c) The trial court erred in vesting the government with lands described in the complaint for the reason that the lands so described include more than the government could properly condemn.

These points require the consideration of the right of the government in the first place to take this property by eminent domain.

In Kohl v. United States, 1875, 91 U.S. 367, 23 L.Ed. 449, the Supreme Court declared that:

"The right of eminent domain was one of those means well known when the Constitution was adopted, and employed to obtain lands for public uses. Its existence, therefore, in the grantee of that power, ought not to be questioned. The Constitution itself contains an implied recognition of it beyond what may justly be implied from the express grants. The fifth amendment contains a provision that private property shall not be taken for public uses without just compensation. What is that but an implied assertion, that on making just compensation, it may be taken?"

Later in United States v. Jones, 1883, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015 the Court said:

"The proceeding for the ascertainment of the value of the property and consequent compensation to be made, is merely an inquisition to establish a particular fact * * * and it may be prosecuted before commissions or special boards or the courts, with or without the intervention of a jury, as the legislative power may designate. All that is required is that it shall be conducted in some fair and just manner, with opportunity to the owners of the property to present evidence as to its value, and to be heard thereon."

Later, in 1931, Congress enacted the Declaration of Taking Act (40 U.S.C.A. § 258a). This statute authorizes the United States, upon filing a declaration and upon depositing an amount of estimated just compensation, to take an immediate vested title in the property it wishes to acquire.

Now, in the instant situation, the landowners do not seem to question the authority to take the land upon payment of just compensation; the landowners seem to base their objections upon such statements as "condemning more than was necessary", "not adequately and realistically describing the properties taken", and "the properties so described include more than the government could properly condemn."

■ The statute, 40 U.S.C. § 258a does not require proof of necessity but makes the question of the government's need depend solely on the opinion of the federal officer, in this case the Solicitor of the Department of the Interior.[4] Moreover, the nature or extent of the interest to be acquired is not reviewable.[5] Congress has established as the standard for the exercise of discretion the "opinion" of the authorized official, and in this instance the official alleges that the use of the property taken is "in connection with the construction, operation and maintenance of Flaming Gorge Dam and Reservoir, Colorado River Storage Project."

The phrase "in connection with" is sufficient allegation to establish the manifest public use of this Reservoir Project. Notwithstanding, the landowners claim that, even though the property taken is basically for a public use, the government was in apparent bad faith, was arbitrary, and was capricious by including more in its taking than was necessary for the basic purpose.

■ The description of the lands taken follows survey lines which conform

---

4. United States v. State of Montana, 9 Cir., 1943, 134 F.2d 194, cert. den. 319 U.S. 772, 63 S.Ct. 1438, 87 L.Ed. 1720.

5. Sweet v. Rechel, 159 U.S. 380, 395, 16 S.Ct. 43, 40 L.Ed. 188, United States v. Kansas City, Kansas, 10 Cir., 1946, 159 F.2d 125.

to plat descriptions the government elected to use. The government took advantage of established boundaries rather than surveying and creating new ones and as a result more land was taken than was absolutely necessary for the basic purpose or basic public use. But taking more land than is needed is no defense to a taking.[6] Moreover, it is no defense to the taking that the property might be used for another purpose in the future.[7] In the absence of bad faith, and bad faith is not demonstrated here, if the use is a public one, the necessity for the desired property as a part thereof is not a question for judicial determination.[8]

 In the ordinary sense of the meaning of the word "arbitrary", it may be said that there has been an excessive arbitrary taking in this case. However, it falls within an "authorized" or "licensed" arbitrariness because it is made with some determining principle. Considering the nature of the lands taken and possible subsequent uses for the lands, it is reasonable to avoid the expense involved in establishing new boundaries following contour lines that would be established at maximum water elevation to the reservoir. Under such circumstances, the so-called arbitrary taking is within the authorized discretion of the federal officer involved and is not in this instance tainted with bad faith or capriciousness. We must find that there is no merit to the landowners' points that the government condemned more than was necessary, that the government did not adequately and realistically describe the properties taken under the circumstances, and that the properties so described include more than the government could properly condemn.

 Another complaint of the landowners is that government appraisers failed in any way to appraise the island piece of property consisting of about 20 acres lying between two pieces of the landowners' property acquired by the government and that by ignoring it, the government is attempting to acquire it without granting any compensation. The answer to this is simple. The island was not described in the complaint, nor in the declaration of taking. Since it was not so taken, its inclusion in the value of property taken would have been improper.

 It is urged that error prejudicial to the landowners' rights was committed when the commissioners admitted, as exhibits, over landowners' objections, charts and summaries prepared by the government's appraisal witnesses. These summarized the evidence of values offered by the witnesses, they were not offered as independent evidence but simply as a review of the evidence already in the case as an aid to be used by the commission in accurately considering the evidence in the case when called upon to make its finding. This is a common procedure used by the commissions to facilitate their work. The trial court properly instructed the commission that it might mark these items as exhibits and receive them in evidence for its consideration and use. No objection was made to this instruction, the admission of the charts was discretionary; the evidence was involved and complicated and no abuse of discretion appears from their admission in evidence. Moreover, the charts fairly and accurately summarized previously admitted competent evidence. The landowners requested no cautionary instructions as to the admission and use of these summary charts by the commission. This court finds no reversible error in their admission and use by the commission. Notwithstanding, in cases heard by juries, it would be proper to give appropriate instructions defining

6. United States ex rel. Tennessee Valley Authority v. Welch, 1946, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843.

7. Berman v. Parker, 1954, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27.

8. United States v. Threlkeld, 10 Cir., 1934, 72 F.2d 464, cert. den. 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708.

the use to be made of such summary charts when received in evidence.[9]

The landowners contend further, that the court erred in limiting their right of ingress and egress for livestock to water at certain designated places to be established at the discretion of the Secretary of the Interior without compensation being given. This claim lacks merit. Landowners introduced no evidence on this item, and their appraisal witnesses did not indicate that it was worthy of consideration in estimating just compensation for land taken.

Landowners complain that by giving Instruction No. 21, the trial court placed the burden of proof on the landowners to prove "just compensation". The trial court properly told the commission "the burden of proof is on the defendant owner to prove by a fair preponderance of the evidence in the case, the amount of just compensation to which he claims he is entitled." Landowners insist that in the absence of any evidence as to value the government could not acquire the land taken for nothing. But such did not happen here. The landowner did offer evidence of value of land taken and of damage to that not taken but whose value was affected by the taking. The general rule and the rule in cases before the Federal Court is that the burden of showing the damages the landowner will suffer rests on him and this rule applies particularly where the owner claims special damage to the residue.[10] The trial court's instructions on burden of proof were not erroneous.

It is urged that Instructions No. 14 and 22, to which landowner objected and excepted before they were given to the commission, improperly eliminated from consideration by the commission the prospective use of the lands taken as it affected its actual value. It is contended that the Wilsons acquired a portion of the land taken for the specific purpose of developing its production of hay and its pasture lands through projected irrigation installations, the result of which could better balance the entire ranch by supplementing the range portion with pasture and hay lands. Such improvements would greatly increase the carrying capacity and consequent value of the ranch.

A review of the record discloses that the commission did take into account the very element which landowners say was eliminated by the court's erroneous instructions. The commission found "that from the evidence presented and our personal inspection and view of the land we questioned the feasibility of the development of some of the lands for which water rights were pending, but we gave consideration to it."

Where instructions given, taken as a whole, are plainly in error a case must be reversed. Here the trial court properly instructed the commission that the term "just compensation" means putting the owner in as "good a position pecuniarily as he would have been had his property not been taken", or "market value, fairly determined", or "the full and perfect equivalent in money of the property taken." The court correctly explained the meaning of "fair market value" and further instructed that:

"5. Fair market value should be fixed upon the basis of the property's highest and best use. By highest and best use is meant either some existing use on the date of taking, which as you will recall in this case is July 19, 1961, or one which the evidence shows was so reasonably likely in the near future that the availability of the property for that use would have affected its market price on the date of taking and would have been taken into account by a purchaser under fair

9. Conford v. United States, 10 Cir., 1964, 336 F.2d 285.

10. United States ex rel. and for Use of Tennessee Valley Authority v. Powelson, 1943, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; and 29A C.J.S. Eminent Domain § 271, p. 1170.

market conditions, but remote or speculative uses should not be considered."

Landowners assert that the phrase "but remote or speculative uses should not be considered" was improper and prejudicial. It is nevertheless, a proper statement of the law, for speculative and remote possibilities cannot become a guide for the ascertainment of value in judicial ascertainment of the truth.[11]

The trial court directed in Instruction No. 14 that prospective or speculative value of the land from possible improvements or prospective uses can not be considered—that the value must be actual and not speculative and that the owner is not entitled to compensation for loss of any future gain he might have hoped to realize above the market value as of the date of taking, and in Instruction 22, the court again instructed the commission, that in determining severance damages, "prospective or planned uses of land, loss of business opportunities, loss of profit and speculative damages are examples of matters which should not be considered in allowance of severance damages."

But the court correctly instructed the commission that "fair market value" should be fixed upon the basis of the property's highest and best use. (See Instruction 5, above.) [12]

▮ In reviewing instructions, they must be considered as a whole and not piecemeal or by taking excerpts from the remainder. When all the court's instructions given here are so considered, we think the commission correctly understood the manner in which they were to consider the issues submitted to them. This is all that is necessary.[13]

▮ What has been said disposes of the claims of error raised by the appellant. It was the trial court's duty to accept the award of the commission unless clearly erroneous, in whole or in part, because of a substantial error in the proceedings, because based upon a misapplication of the controlling law, because unsupported by the evidence, or because contrary to the clear weight of the evidence.[14]

From a review of the whole record it appears that the trial court committed no substantial error in the proceedings before it or in confirming, approving and adopting the award.

The judgment is, therefore, affirmed.

11. Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236, United States v. Buhler, 5 Cir., 1962, 305 F.2d 319, 328, and 29A C.J.S. Eminent Domain § 160, p. 677.

12. United States v. Benning, 9 Cir., 1964, 330 F.2d 527, 531.

13. Riley v. Layton, 10 Cir., 1964, 329 F.2d 53, 58.

14. United States v. Waymire, supra.