**UNITED STATES of America,
Appellant,**

v.

**D. W. EVANS and Edith Evans, Appellee.**

**No. 8665.**

United States Court of Appeals
Tenth Circuit.

July 14, 1967.

A. Donald Mileur, Atty., Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Frank McAnear, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

A. Harry Crane, Topeka, Kan. (R. L. Hannen, Burlington, Kan., Arthur L. Claussen, and Crane, Martin, Claussen & Ashworth, Topeka, Kan., with him on the brief), for appellees.

Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

The United States has taken this appeal from a judgment of the United States District Court for Kansas in land condemnation proceedings. The trial court approved the report of commissioners to whom the matter had been referred under Rule 71A(h). The proceedings concern a number of separate parcels of land in the same ownership, but not contiguous, some of which were condemned and some not.

Prior to the hearing before the commissioners, the owners advised the United States that they would present evidence as to the "use and operation" of some thirty separate parcels of land they asserted were affected by the condemnation proceedings. The United States protested this proposed course of action, and a hearing was had in the district court. The trial judge instructed the commissioners to hold a hearing to determine whether the owners were using the several tracts of land as a unit. The commissioners did hold a hearing for this purpose and found that the several tracts constituted a single economic unit. As the case developed the number of non-contiguous tracts concerned under the owner's theory was reduced to eighteen, and some of these were valued.

The hearings thereafter proceeded on that basis to determine the damages, and the commission submitted its report. As indicated above, the trial court approved the report and the appeal was taken.

The United States here urges several points for reversal. These include: The finding of a "single economic unit" or single tract, lack of substantial evidence on the value of the remaining lands or after value, and inadequacy of the commissioners' report in that the commissioners did not show how they arrived at their findings or the award, nor what testimony was accepted by them.

The case in many respects is comparable to United States v. Waymire, 202 F.2d 550 (10th Cir.), in which opinion many of the issues here raised are decided.

██ There is no question but that the owner must prove the damages to which he claims he is entitled. Wilson v. United States, 350 F.2d 901 (10th Cir.). This is applicable to damages for the property actually taken as well as to severance damages. Wilson v. United

States, supra. The proof of damages is supplied of course by evidence of market value if it is available, United States v. Sowards, 339 F.2d 401 (10th Cir.), United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, but there is no rigid formula.

The owners in the case at bar presented witnesses who testified as to what they considered comparable sales, and from these expressed their opinions as to the values in issue. Witnesses were also presented who testified in detail on the "single economic unit" issue.

The record shows that all the eighteen separate parcels were used for the cattle raising and feeding operations of the owners; the United States agrees that they were so used, but says this common business purpose for beef production did not as a matter of law make the parcels one tract for the purposes of damages. The Government says " * * * the failure of the commission and the trial court to give any substantial weight to any factor other than unity of use is contrary to the decided cases, and therefore erroneous." The Government thus argues in effect that there was shown an economic or business unit, but not a unity of the land.

Severance damages generally have been recently considered by this court in Stipe v. United States, 337 F.2d 818 (10th Cir.), and there is no need to further treat the matter here. We early considered the operation of several farms or ranches together in Grand River Dam Authority v. Thompson, 118 F.2d 242 (10th Cir.), and in the Waymire case, supra. See also Wilson v. United States, 350 F.2d 901 (10th Cir.).

In the case before us the owners operated on pasture land located in several noncontiguous tracts some miles apart at scheduled times of the year and for certain purposes. They also used, at other times in their routine, tillable pastures, croplands, and bottom silage lands. In addition, there were needed the headquarters lands and improvements, the improved pastures for winter, and the feeding yards. This type of stock raising, according to the record, is common in Kansas, and the separation of the tracts used even to a greater extent is likewise a common occurrence. This separation was considered desirable by some of the witnesses to take advantage of variations in rainfall, types of soil, and other factors.

In short, there appears to be nothing unusual about the owner's stockraising methods nor the geography of his property. The question raised by the Government is basically whether the commissioners and the trial court considered only the unity of the owner's business.

There were allowed severance damages as to some 2,744 acres out of the total acreage before taking of 11,271 acres. Of this land found damaged some 2,013 acres are within four miles of the headquarters, and damages were allowed at $10.00 per acre on this land. Severance damages of $7.50 per acre were allowed on 575 acres some eleven miles from the headquarters, and $5.00 per acre on 156 acres remaining after a flowage easement was taken from the same tract which was some seventeen miles from the headquarters. The lands condemned in fee were river bottom lands with but a small amount of woodland and waste land. This land was used for raising corn ensilage, and was within an economical hauling distance from the headquarters. This land produced some fifteen to twenty tons per acre. About 471 acres of this land were taken with a value according to the commissioners' report of about $132,000 out of the total award of $160,000. The owners contend that the allowance of $2,000 severance damage to the headquarters was inadequate, but did not appeal from such award. The record shows that the carrying capacity of the entire property was reduced by the taking from 2,000 head to 1,000.

We cannot say from our examination of the record that the findings were not supported by the evidence. The award of severance damages only as to a relatively small percentage of the total lands concerned demonstrates that the

court and the commissioners were not considering the business loss of the owners, but the interdependent use of the several tracts taken and those not taken. The same consideration is evidenced to a lesser extent by the variations in the per acre severance damages. The court and the commission thus found that out of the whole there was a unity with the tracts taken of these several parcels.

The diminution in value of the remainder was clearly within United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, and Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211. The Government in oral argument would have limited severance damages to the taking of a part of a single tract all parts of which were contiguous. In its brief it says: "Contiguity is not the sole test, but it is the primary one in determining what constitutes a single tract." It relies on International Paper Co. v. United States, 227 F.2d 201 (5th Cir.); United States v. Honolulu Plantation Co., 182 F.2d 172 (9th Cir.); Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, and upon its construction of Sharp v. United States, 191 U.S. 341, 24 L.Ed. 114, 48 L.Ed. 211, to urge in effect that business losses were allowed rather than severance damages to the land.

We do not understand Sharp v. United States, supra, to mean that severance damages are allowable only to the remaining portion of a tract all portions of which are contiguous, and the case has not been otherwise so interpreted. In Sharp, the issue of damage to the separate farms related to "prospective" damages, not here concerned. "A tract" as the term there appears means instead any parcel or parcels of land which by their use or potential use (United States v. Waymire, 202 F.2d 550 (10th Cir.)) are a unit. The Supreme Court states that damages will be awarded if the "integrity" of such a tract is destroyed. Here the commission found as did the trial court that the several tracts for which severance damages were awarded were with the lands taken part of such a unit. This finding is supported by the record.

In the Honolulu Plantation case, issues related more to lands held under lease and to non-owned lands. In the International Paper case the court restricted damages to the realities of the situation as it did here. In the cited case the contiguous tract test was met under the Government's argument here, but it was so large a tract that the court could not realistically apply the rule as it did in the case at bar. As to the plant site in the cited case there would seem to be no question, but it is unrelated to the issues here. Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, was concerned with business damage, and is related to the Government's argument of business damage here; however, the award here demonstrates, as we have above described, that it was not predicated on the damage to the economic enterprise of the owner.

This case must be considered to be an extreme one, as to the noncontiguous tract problem; however, the record shows unusually clear evidence on the point. The damages have been well limited to the integrated lands.

The Government argues that there was no substantial evidence on which an award of severance damages could be made. It advances the general rules as to the owner's burden which we have considered above, and urges that the market value of the noncontiguous tracts not taken was not shown to be less after the taking than before.

■ The witnesses for the owner testified that in their opinion pasture land sold separately would bring a lower price than if sold as part of a ranch—a balanced unit. This testimony was put forward as expert testimony based on their experience and upon the particular sales to which they referred. There appears to be no such particular sale described in the record which demonstrates this fact in isolation; but contrary to the Government's argument this is not required. International Paper Co. v. Unit-

ed States, 227 F.2d 201 (5th Cir.). The testimony of the witnesses thereby did not become insubstantial, it was not speculative nor based on assumption. See United States v. Certain Interests in Property, 296 F.2d 264 (4th Cir.), and United States v. Cooper, 277 F.2d 857 (5th Cir.). The testimony instead was substantial and provided evidence to support the award.

The Government under several separate points urges that the report of the commissioners was formally defective. The first ground urged in this connection is that it does not "explain" how the award was reached.

There has been much written by the courts concerning the findings of commissioners under Rule 71A(h) of the Federal Rules of Civil Procedure. In 1964 the Supreme Court in United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629, laid down the rules which the commissioners must follow. The Court said that conclusions are not sufficient; the court in reviewing such findings cannot apply the clearly erroneous test. The Court indicates that the report should show " * * * what path the commissioners took through the maze of conflicting evidence," but that detailed findings as a court would make are not required, nor are findings required on all contested issues. See also United States v. Bell, 363 F.2d 94 (8th Cir.). The report with which we are here concerned may leave something to be desired in its treatment of other than the principal facts, but we cannot say it is defective under United States v. Merz, supra, nor under United States v. Waymire, 202 F.2d 550 (10th Cir.). The report states the value standard which was applied, the before and after values, the interrelation of the various tracts, details as to the types of land, the use made of them, and the values. These recitations, together with the tabular material, show how the result was arrived at as a practical matter. There was no recitation of various theories which could be applied nor why they should or should not be rejected, but this is not required. The facts stated show the path and this is enough.

The record shows that the trial court gave the proper effect to the findings of the commissioners, and it cannot be said that such findings were clearly erroneous. The values were well within the range of the evidence. Chandler v. United States, 372 F.2d 276 (10th Cir.).

Affirmed.