**UNITED STATES of America,**
**Appellee,**

v.

**105.40 ACRES OF LAND, MORE OR LESS, Situate IN PORTER COUNTY, STATE OF INDIANA (Northern Indiana Bank and Trust Company, Trustee For Bethlehem Steel Corporation), Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**253.61 ACRES OF LAND, MORE OR LESS, Situate IN PORTER COUNTY, STATE OF INDIANA (Northern Indiana Bank and Trust Company, Trustee For Bethlehem Steel Corporation), Appellant.**

**Nos. 71–1396, 71–1397.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 29, 1972.

Decided Aug. 9, 1972.

Charles T. Clifford, Valparaiso, Ind.,
Julius L. Sackman, Albany, N. Y., Wil-
liam T. Bresnahan, Bethlehem, Pa.,

Chester, Clifford, Hoeppner & Houran, Valparaiso, Ind., for appellants.

William C. Lee, U. S. Atty., Richard L. Kieser, Asst. U. S. Atty., Fort Wayne, Ind., Shiro Kashiwa, Asst. Atty. Gen., Robert S. Lynch, Larry G. Gutterridge, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before KILEY and STEVENS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

A jury awarded Northern Indiana Bank and Trust Company[2] (Trustee) $319,350 and $73,320, respectively, for one 150 acre parcel and one 40 acre parcel of real estate owned by the Trustee for the sole benefit of Bethlehem Steel Corporation,[3] and taken by the government in aid of the establishment of the Indiana Dunes National Lakeshore[4] Park. Judgment was entered on the verdict and Bethlehem has appealed. We reverse and remand for a new trial.

There is no substantial disagreement about the facts. The parcels located in Porter County, Indiana, were unimproved and unused by Bethlehem at the time of the taking, February 16, 1971. The north 820 feet of the 40 acre square parcel is zoned for single-family residences, and the south 500 feet is zoned for a "green belt"—a strip of greenery set aside as a "screening area between a residentially zoned tract and . . . a heavy industry area." This parcel is bound on the north, east and west by residential areas of the town of Dune Acres, and on the south by property formerly owned by Bethlehem but conveyed to NIPSCO.[5] The 150 acre parcel is in the town of Dune Acres and lies across the Mineral Springs Road with about 58 acres west of the Road zoned for industrial or light industrial use,[6] and the balance east and west of the Road zoned for general business or commercial use.

After a pre-trial conference with the parties, the district court entered a pre-trial order [F.R.C.P. 16] which, *inter alia*, recited the contentions of the parties. Bethlehem's theory was that the two parcels in suit were an integral part of its 1939 acres lying north of Highway 12 in Porter County; that each parcel was part of the "whole tract" "assembled as raw land;" that the "whole tract" was used and treated as a "unitary tract;" that the value of each parcel taken should be measured by reference to its contribution to the whole; and that the measure of value should be the "highest and best" current use of the two parcels as part of the "whole tract" under existing zoning ordinances or the adaptability of the parcels to a different use in the event of reasonable probability of zoning change in the near future. Bethlehem disclaimed severance damages.

Evidence was introduced at trial showing that Bethlehem had acquired the 1939 acres, planned and started construction in 1962 for the building of a fully integrated steel mill with a ten million ton annual capacity; that the plant had reached a present annual capacity of two million tons; that the plant presently employed between 5,000 and 6,000 workers but that upon completion it would employ between 10,000 and 25,000 workers; and that Bethlehem had, up to the time of trial, invested over one billion dollars in the construction of the mill.

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

2. Formerly Farmers State Bank of Valparaiso.

3. For convenience we shall refer to Bethlehem as the "owner" of the parcels throughout this opinion.

4. PL 89–761, November 5, 1966.

5. Northern Indiana Public Service Company.

6. There was some difference in the testimony on this.

The district court effectually rejected Bethlehem's offer to prove that the entire 1939 acres should be treated as a unitary tract, having contiguity, unity of title, and a common design from the original acquisition to the completion of the mill. The court also rejected proffers of evidence—as related to the unitary theory—that although Bethlehem had conveyed property intervening the main tract and the two parcels to NIPSCO, it had reserved easements which could be used for roadway purposes; that the condemned parcels were tied to the sewage system of the main tract; that the elevation of the condemned tracts could be increased by the grading of excess sand from other parts of the 1939 acres; and that the condemned parcels could be used for general "business and commercial" use as accessory areas (parking, storage, maintenance, office buildings, hospital and clinic, police and fire stations) necessary to a fully developed and integrated steel mill. The court also rejected Bethlehem's argument that the value of the entire 1939 acre tract, before and after the taking, was the measure of damages.

The court rejected Bethlehem's theory on the ground that Bethlehem had disclaimed severance damages. The court thought that Bethlehem could not legally measure its damages by determining the difference between the value of the entire tract of 1939 acres before and after the taking, since that involved "an averaging technique whereby Bethlehem would endeavour to average the total value of the tract upon which its plants [were] situat[ed], over all the lands owned by Bethlehem." The district judge also specified as other reasons: 1) that the two parcels were non-contiguous to Bethlehem's main tract, 2) that the two parcels were not in "present use," and 3) that the parcels were not zoned for "heavy industry."

We hold that the district court erred in deciding as a matter of law that Bethlehem was not entitled to prove that the entire 1939 acres constituted one unit and that the measure of damages is the fair market value of the entire 1939 acres before and after the taking. We think that the ruling precluded Bethlehem from proving the appropriate elements of its damages, i. e., the highest and best use before the taking to which the parcels were adaptable, or to which the parcels would likely be needed in the reasonably near future, as part of the development of the entire 1939 acres.

## I.

The Supreme Court pronouncements on what is "just compensation" within the meaning of the Fifth Amendment [7] furnish the fundamental guide to determination of damages in condemnation cases. Just compensation means the

> full and perfect equivalent in money of the property taken . . . [with the] owner · . . to be put in as good position pecuniarily as he would have occupied if his property had not been taken. . . . [And] . . . in an effort . . . to find some practical standard, the courts early adopted and have retained, the concept of market value . . . or, more concisely, "market value fairly determined" . . . what a willing buyer would pay in cash to a willing seller. United States v. Miller, 317 U.S. 369, 373–374, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1942).

In Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1933) the Court had previously said:

> Just compensation includes all elements of value that inhere in the property. . . . [T]he sum required to be paid . . . does not depend upon the uses to which [the owner] has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable

7. " . . . nor shall private property be taken for public use, without just compensation."

and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held.   .   .   . [And] the fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value.   292 U.S. at 255–256, 54 S.Ct. at 708.

The same rule was reiterated by the Court in McCandless v. United States, 298 U.S. 342, 345, 56 S.Ct. 764, 80 L.Ed. 1205 (1935), and United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 275–276, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943). We think, under proof of its "unitary theory," Bethlehem would be entitled to have its averaging technique applied. *Olson, supra; McCandless, supra*; *Powelson, supra.*

■■ The disclaimer of severance damages by Bethlehem did not necessarily preclude it from presenting evidence of its "unitary theory"—highest and best use measure of damages—to the trier of fact. See United States v. Miller, *supra*, 317 U.S. at 379, 63 S.Ct. 276. The essence of severance damages is the loss in value to the "remainder tract" by reason of a partial taking of land. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903); Jahr, Eminent Domain § 96 (1953). This is predicated on the enhanced value of the "remainder tract" because of its relationship to the whole prior to the taking. The thrust of Bethlehem's "uni-

tary theory," however, was predicated on the enhanced value of the "condemned parcels" by reason of their relation to the whole,[8] based on their highest and best use.

■■ Non-contiguousness *per se* was not fatal to Bethlehem's unitary theory. *Olson, supra; McCandless, supra*; United States v. Evans, 380 F.2d 761 (10th Cir. 1967). Nor was the current "non-use" of the two tracts by itself fatal to Bethlehem's theory. The relevant question was not the uses to which Bethlehem had devoted its land, *Olson*, 292 U.S. at 255, 54 S.Ct. 704, but whether in the "reasonably near future" there was a "reasonable probability" of the lands in question being put to their "highest and best use" in combination with the main tract so as to affect their market value. *Powelson* at 275–276, 63 S.Ct. 1047. And the variance in zoning between the main tract and the condemned tracts was critical only if the full development and integration of the steel mill—as proffered by Bethlehem—depended on the use of the condemned tracts for "heavy industry." There was no evidence that the tracts were required to be zoned for heavy industry in order that they be considered an integral part of the entire 1939 acres. The proffer of evidence was to the contrary.

We think Bethlehem was entitled to offer evidence that the condemned tracts were convertible to a more profitable use; that there was a "reasonable probability" in the "reasonably near future" they would be needed as "accessory areas" to a fully developed and integrated plant; that they should be considered as an integral part of the entire 1939 acres for valuation purposes; and that

---

8. It might be argued that recovery of damages arising from a) the relation of the "remainder tract" to the whole, and b) the relation of the "condemned tract" to the whole, have both been "loosely spoken of," United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276 (1942), and treated as severance damages. 4 Nichols, Eminent Domain §§ 14.1 [3], 14.231 (3d Ed. 1971).

We think that the language of the pretrial order, however, made it clear that if Bethlehem was disclaiming the former, it was not disclaiming the latter, based on the "highest and best" use of the condemned parcels in their relation to the whole.

accordingly they had a higher averaged value by reference to their relation to the whole. Only after proper consideration of all the factors bearing upon the integration of the two parcels with the whole could the trier of fact decide whether the claimed "higher and best" use was "reasonably probable" or "too remote and speculative" to have any effect on market value.

## II.

■ The next question is whether the right to a jury trial by F.R.C.P. 71A(h) on just compensation, in eminent domain proceedings, extends to the issue here— whether the condemned tracts were an integral part of Bethlehem's entire 1939 acres.

In United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970), the Court stated:

> . . . [W]e think that the Rule's [F.R.C.P. 71A(h)] basic structure makes clear that a jury in a federal condemnation proceedings is to be confined to the performance of a single narrow but important function—the determination of a compensation award within the ground rules established by the trial judge. The Rule gives the trial court discretion to eliminate a jury entirely. And when a jury is afforded, the sweeping language of the final sentence of the Rule discloses a clear intent to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial. It is for him to decide "all issues" other than the precise issue of the amount of compensation to be awarded.

We hold that under *Reynolds, supra,* the district judge should—upon proper consideration of evidence—decide the factual question whether the condemned parcels here were an integral part of the

1939 acres, or were functionally separate parcels. The judge should then instruct the jury on the issue of just compensation, consistent with his preliminary factual determination. If the judge decides that the two parcels were an integral part of the entire 1939 acres, then he should instruct the jury to award "just compensation" in accordance with the law as stated in Part I of this opinion; if the judge decides that the two parcels were functionally separate units from the main tract, then he should instruct the jury consistently with that finding.[9]

For the reasons given the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

---

9. For the procedure followed by one district court, see United States v. 327 Acres of Land, 320 F.Supp. 844 (N.D. Ga.1971).