**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a body corporate, Appellant,**

v.

**ONE PARCEL OF LAND IN MONTGOMERY COUNTY, MARYLAND, Old Georgetown Associates, et al., and Unknown Owners, (Parcel MA 349), Appellees.**

No. 82–1092.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1982.

Decided Oct. 19, 1982.

Martin Green, Dept. of Justice, Washington, D.C. (Robert L. Klarquist, Alan Brenner, Dept. of Justice, Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., on brief), for appellant.

Charles G. Dalrymple, Silver Spring, Md. (Linowes & Blocher, Silver Spring, Md., on brief), for appellees.

Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

The Washington Metropolitan Area Transit Authority (WMATA) appeals from a judgment awarding compensation in a condemnation case. WMATA condemned a parcel of land for use as a parking lot for a mass transit station, and the owner, Old Georgetown Associates (Old Georgetown), was awarded $759,800 with prejudgment interest of $221,124.64. WMATA attacks the correctness of the award on the ground that it should have been reduced by the amount of the special benefit to be conferred by the mass transit project on another piece of property retained by Old Georgetown. In a ruling affirmed by the district court, a United States magistrate held that such a reduction would be improper because the condemned parcel and the retained parcel were separate. We reverse and remand. Under the special circumstances of this case, we prescribe a method for calculating the award different from the one advocated by WMATA.

The condemnation case arises out of the extension of Washington's mass transit system into the residential area surrounding the District of Columbia. In 1966 Congress authorized Maryland, Virginia and the District of Columbia to enter into a compact to plan, develop, finance and cause to be operated a coordinated system of rapid rail transit, bus transportation service and highways. Pursuant to the compact, WMATA was created to plan for the mass transit needs of the Washington Metropolitan Area Transit Zone, a region including the portion of Montgomery County, Maryland, in which the condemned land is located. WMATA was authorized, inter alia, to address "the locations of terminals, stations, platforms [and] parking facilities..." and it was directed to coordinate its activities with "other plans and programs affecting transportation in the Zone" formulated by various political subdivisions within the Zone.

While the overall project was designed to be supported as far as possible by users of facilities to be constructed, the remaining costs are shared equitably among the federal, state and local governments. It is fair to say that the extension as it affects the land with which we are concerned in this case is a result of a joint cooperative effort among the federal government, the State of Maryland, WMATA and Montgomery County, Maryland, and its various agencies.

I.

Old Georgetown purchased the land which has been condemned in 1972 as part of a parcel of land in Montgomery County, Maryland, consisting of approximately 15.32 acres.[1] At the time of the purchase, the land was zoned for low-density residential development, and Old Georgetown sought to have it rezoned for high-density residential development. It was informed that the land was in a "transit impact zone"—an area which would be affected by the future construction of Washington's mass transit system—and that consideration of the rezoning request would therefore be deferred until after the plans for Washington's mass transit system had been finalized. Old Georgetown was also informed that land within a certain distance of a mass transit station would be eligible for special zoning that would allow residential development of even higher density than it had contemplated. Accordingly, it withdrew its rezoning request and waited for the plans for Washington's mass transit system to be finalized. WMATA subsequently announced that a mass transit station would be built close enough to the parcel owned by Old Georgetown to make that parcel eligible for the special zoning.

In 1975, Old Georgetown learned that Montgomery County was planning to extend two roads through its parcel, largely in order to accommodate the increase in traffic that would result from the construction

---

1. Conflicting acreage figures are given by the parties, the United States magistrate and the district court. The differences are of no significance for the resolution of this appeal. We have adopted the figures given by the landowner.

of the planned mass transit station. Specifically, it learned that the county planned to acquire 2.6 acres of its parcel for the rights-of-way for the planned road extensions, leaving the landowner with three parcels of land—one of 9.7 acres, one of 2.52 acres, and one of 0.5 acres. Initially it sought to persuade the county to change its plans, but by 1978 Old Georgetown had resigned itself to them. The plan to extend the roads became final in 1978 when the plan to place the parking lot on Old Georgetown's property also became final. By that date all participating jurisdictions had approved location of the parking lot and extension of the roads and the approvals were spelled out in the 1978 Master Plan.

Between 1975 and 1978, Old Georgetown obtained the special zoning for the 9.7-acre parcel, due to its proximity to the planned mass transit station, and drew up detailed development plans for the 9.7-acre parcel. Prior to learning of the planned road extensions, Old Georgetown had not drawn up any detailed development plans for its property.

On July 9, 1979, WMATA instituted suit to condemn the 2.52-acre parcel. It did so to implement the final decision made in 1978 to use the parcel for a parking lot which would serve the planned mass transit station. It also filed a declaration of taking on that date. Believing that the compensation for the 2.52-acre parcel would be reduced by the amount of the special benefit to be conferred on the 9.7 acre parcel by the mass transit project, WMATA deposited only a nominal amount in the registry of the court.

On August 11, 1979, thirty-two days after WMATA took the 2.52-acre parcel, the county contracted with Old Georgetown, in lieu of condemnation, to purchase the 2.6 acres needed for the rights-of-way for the planned road extensions. The record does not appear to reflect accurately the purchase price. Undoubtedly the contract of sale had been preceded by some negotiations.

A United States magistrate thereafter ruled in the condemnation proceeding that

the landowner should simply receive the market value of the 2.52-acre parcel as it would be at present if the mass transit project had never been undertaken. In response to WMATA's claim that the award should be reduced by the amount of the special benefit to be conferred on the 9.7-acre parcel by the mass transit project, the magistrate concluded that the 2.52-acre parcel and the 9.7-acre parcel were separate. He relied on the physical separation of the two parcels which would occur in the future when the land for the rights-of-way for the planned road extensions was transferred to the county and, more importantly, on the fact that prior to the condemnation, Old Georgetown had obtained the special zoning and drawn up detailed development plans for only the 9.7-acre parcel.

WMATA appealed the magistrate's ruling to the district court, which affirmed. The case was then referred to a land commission, which set compensation at $759,-800. WMATA objected on the ground that the award had not been reduced by the amount of the special benefit to be conferred on the 9.7-acre parcel by the mass transit project. The district court overruled the objection and entered final judgment, increasing the award by prejudgment interest and fixing the rate of postjudgment interest. This appeal ensued.

## II.

As a general rule of law, the compensation paid for the taking of land, where less than the owner's whole tract is taken, should be reduced by the amount of the special benefit to be conferred, and increased by the amount of the damage to be inflicted, by the taking on the land retained by the landowner. *See* 4A *Nichols' The Law of Eminent Domain* § 14.25, at 14–633 to 636 (3d ed. 1981). In deciding whether the taken land is a part of the same tract as the retained land, the physical relationship between the taken land and the retained land is relevant but not determinative. *See generally id.* § 14.26. Rather, the pivotal question is whether there is a potential unity of use between the taken land and the

retained land. *See generally id.* The parties agree that the question of potential unity of use was properly decided by the magistrate and the district court, rather than by the land commission. Even if that is true, however,[2] it is undisputed that the question is one of fact. *See id.* § 14.26, at 14–649 to 654; *United States v. 105.40 Acres of Land,* 471 F.2d 207, 212 (7 Cir. 1972).

The pivotal issue in the present case, however, is much narrower than whether there is a potential unity of use between the taken land and the retained land. It is beyond dispute, we think, that if the impact of the planned road extensions is taken into account, the taken land and the retained land are separate, and vice versa.[3] Accordingly, the pivotal issue is the narrow one of whether the impact of the planned road extensions should be taken into account. We think that that issue is one of law, so that the decision reached below is freely reviewable on appeal.

## III.

■ We think that the impact of the planned road extensions should not be taken into account, and therefore that there is a potential unity of use between the taken land and the retained land. If, with no advance warning, the same governmental entity had simultaneously condemned both the 2.6 acres needed for the rights-of-way for the planned road extensions and the 2.52 acres needed for the parking lot, there would be no doubt that the compensation should be reduced by the amount of the special benefit to be conferred, and increased by the amount of the damage to be inflicted, by the taking on the land retained by the landowner. We think for practical purposes that this is that case. Both takings—the taking of land for the rights-of-way, achieved by purchase rather than condemnation, and the taking for the parking lot—were for the same basic purpose—the extension of the Washington mass transit system into the surrounding area in Maryland. The final decisions to take both were reached contemporaneously, if not simultaneously, in 1978. Both takings were contemporaneous with each other. The only distinction between this case and that posited is that in the instant case, the acquiring authorities were two separate governmental entities. Yet they were working in a cooperative effort to accomplish a single objective so that we think the distinction is without real difference. Stated otherwise, we do not think that there should be a different result in the present case simply because it was necessary that the mass transit project be undertaken by an alliance of various governmental entities formulating, announcing and carrying out their plans at different speeds.

WMATA asks simply that the award—based on the market value of the 2.52-acre parcel as it would be on the date of taking if the mass transit project had never been undertaken—be reduced by the amount of the special benefit to be conferred on the 9.7-acre parcel by the mass transit project.

**2.** In *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970), the Supreme Court held that the question of whether a condemned parcel of land had been within the original scope of a project should be decided by the court, rather than by the jury. (When a magistrate is used, as one was in the present case, he is used as a partial or total substitute for the court, and when a land commission is used, as one was in the present case, it is used as a substitute for the jury.) The holding in *Reynolds* is criticized by the leading authority on the subject, however, *see* 4A *Nichols' The Law of Eminent Domain, supra,* § 14.26, at 14–654, and only one federal court above the district court level has yet considered whether *Reynolds* governs when the question to be decided is whether there is a potential unity of use between the taken land and the retained land, *see United States v. 105.40 Acres of Land,* 471 F.2d 207, 212 (7 Cir. 1972) (holding that it does). Since neither party in the present case has objected to the fact that the question of potential unity of use was decided by the magistrate and the district court, rather than by the land commission, we decline to consider the propriety of that aspect of the proceedings below.

**3.** We refer to the impact of the planned road extensions both upon the physical relationship between the taken land and the retained land, and upon the landowner's rezoning requests and detailed development plans.

We think, however, that, by reason of our conclusion that this case is undistinguishable from the case where a single condemning authority took both parcels simultaneously for a single purpose, a different method of computing Old Georgetown's damages is in order. We think that the district court should instruct the land commission to compute the difference between (1) the market value of the original 15.32-acre tract as it would have been on the date of taking if the mass transit project had never been undertaken and (2) the sum of (a) the market value on the date of taking of the land ultimately to be retained by Old Georgetown, and (b) the amount received by Old Georgetown from Montgomery County for the sale of land for the road extensions. The district court should give judgment to Old Georgetown for the difference between the two with prejudgment interest to the date of judgment. Stated otherwise, the land commission should ascertain the difference between the value of what Old Georgetown had on the date of taking and what it had after the taking, and the district court should give judgment for that amount (plus prejudgment interest).

In addition to avoidance of many of the difficulties attendant upon applying traditional principles of enhancement of value and severance damages to this unique situation, we see several other benefits to be realized by using our formula instead of WMATA's.

First, it is possible that because of the special benefit to be conferred upon the 9.7-acre parcel by the mass transit project, Old Georgetown agreed to sell the 2.6 acres needed for the rights-of-way for the planned road extensions to Montgomery County for less than the market value of the 2.6 acres as it would be on the date of taking if the mass transit project had never been undertaken. In other words, it is possible that one of the governmental entities undertaking the mass transit project has already garnered some or all of the special benefit to be conferred upon the 9.7-acre parcel. If that is true, the method of calculation advocated by WMATA would pro-

duce a windfall for the governmental entities taken as a whole. Our method would not. Indeed, the method we prescribe would also insure that the appropriate adjustment would be made in the unlikely event that Montgomery County paid *more* for the 2.6 acres than its market value as it would be on the date of taking if the mass transit project had never been undertaken.

Second, the method of calculation advocated by WMATA does not take into account the 0.5-acre parcel retained by Old Georgetown. If a special benefit is to be conferred on that small parcel by the mass transit project, the award should be reduced accordingly. And if the value of that small parcel is to be decreased by the mass transit project, that decrease should be taken into account to WMATA's detriment.

Accordingly we reverse the judgment and remand for a new computation of compensation by the method we prescribe.

REVERSED AND REMANDED.