[Civ. No. 29864. Second Dist., Div. Three. Nov. 22, 1967.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. JULIUS L. NYRIN et al., Defendants and Respondents.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

290

Harry S. Fenton, R. B. Pegram, Richard L. Franck, W. H. Peterson, Elbert E. Hensley and Robert W. Vidor for Plaintiff and Appellant.

Hansen & Dolle, Hodge L. Dolle, Victor R. Hansen, Hodge L. Dolle, Jr., and Henry F. Walker for Defendants and Respondents.

MOSS, J.—The People appeal from a judgment in condemnation awarding the sum of $183,000 for property taken from defendants for freeway purposes. The jury awarded $63,000 for the property taken and $120,000 for severance damages. Only the award of severance damages is in controversy on this appeal.

Appellant sought to condemn lots 18, 19 and 20 of Tract 14798, which were referred to in the complaint and are referred to in this opinion as Parcel 7. Parcel 7 was part of an entire block consisting of lots 15 through 28. Lots 15, 16 and 17 were occupied by the Bradford Medical Building and on May 4, 1962, were owned in fee by Dolores D. Kaye, one of the defendants and respondents herein. On May 4, 1962, appellant purchased the Bradford Medical Building for the same freeway for which this action was brought. Summons in this action was issued on August 17, 1962 (hereinafter referred to as the ''date of condition''). On that date lots 18 through 28 were owned in fee by respondents Nyrin and U.L.C. Corporation. Lots 25 through 28 and a portion of lot 24 were occupied by the Bella Vista Community Hospital. The lots between the hospital and the medical building, lots 18 through 23 and a portion of lot 24, were used for parking for both the hospital and the medical building. The route of the proposed freeway across the property is shown on the diagram.*

The trial court ruled, after receiving evidence on the subject, that Parcel 7 was not an entire parcel, as contended by appellant, but part of a larger parcel consisting of lots 18 through 28. The court also ruled that on the date of condition the hospital had the number of parking spaces required by the applicable zoning ordinance. The effect of this ruling, according to appellant, was to permit the experts and the jury to include, in determining severance damages, the loss to the hospital of some parking spaces on Parcel 7 which, prior to the purchase of the medical building by appellant on May 4, 1962, appellant contends, had been reserved for the exclusive use of the medical building. After the trial court ruled that Parcel 7 was part of a larger parcel appellant moved the court for a determination that, in view of this ruling, appellant had no authority to acquire the excess portion of Parcel 7 because such excess was not needed for the improvement and had been included in the take under the authority of section 104.1 of

*See page 300 for diagram.

the Streets and Highways Code.[1] The trial court denied appellant's motion and offer of proof made in connection therewith.

Appellant contends that the trial court committed reversible error in making each of these rulings.

*The Ruling that Parcel 7 was Part of a Larger Parcel*

■ Severance damages accrue only where the property sought to be condemned is part of a larger parcel. (Code Civ. Proc., § 1248.) California courts have established three prerequisites to a finding that a single parcel exists: unity of ownership, unity of use and, ordinarily, contiguity. (See *County of Santa Clara* v. *Curtner*, 245 Cal.App.2d 730, 736 [54 Cal.Rptr. 257]; *People* ex rel. *Dept. of Public Works* v. *Dickinson*, 230 Cal.App.2d 932, 934 [41 Cal.Rptr. 427]; and authorities cited therein.) ■ Appellant contends that the unities of ownership and use were not shown to exist as to Parcel 7 and lots 21 through 28. ■ What constitutes a single parcel of land in the contemplation of section 1248 is essentially a question of law (*City of Oakland* v. *Pacific Coast Lbr. & Mill Co.*, 171 Cal. 392 [153 P. 705]) but may involve issues of fact. (*Stipe* v. *United States* (10th Cir. 1964) 337 F.2d 818; 4 Nichols, Eminent Domain, § 14.31, p. 715.) While the evidence is basically not in conflict as to the ownership and use of the property, it is to some extent susceptible of two interpretations. ■ Insofar as the evidence is subject to opposing inferences, it must upon a review thereof, be regarded in the light most favorable to the ruling of the trial court. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123]; *City of Menlo Park* v. *Artino*, 151 Cal.App.2d 261, 270-271 [311 P.2d 135].)

In 1956 lots 18 through 28 were owned by Bella Vista Investment Company and lots 15, 16 and 17 were owned by Herman Kaye, the husband of Dolores D. Kaye, and Bertram Harris. On January 10, 1956, Kaye and Harris entered into a 50-year lease of lots 18, 19 and 20 (Parcel 7) as lessees "for the operation of a parking lot" at a rental of three dollars per year. The major consideration given by the lessees for this lease was their agreement to build a medical building on lots

---

[1] Section 104.1 of the Streets and Highways Code reads: "Whenever a part of a parcel of land is to be taken for State highway purposes and the remainder is to be left in such shape or condition as to be of little value to its owner, or to give rise to claims or litigation concerning severance or other damage, the department may acquire the whole parcel and may sell the remainder or may exchange the same for other property needed for State highway purposes."

15, 16 and 17 to help the hospital, which was then in operation. The lessor and lessees agreed that the leased property would be used for joint parking for the hospital and the medical building. The medical building was completed in 1958. Herman Kaye was the manager of the medical building from the time it was built until it was sold to appellant on May 4, 1962. Construction of the medical building was financed in part by a loan from John Hancock Life Insurance Co. which was secured by a deed of trust on lots 15, 16 and 17 and an assignment of the lessees' interest in the 50-year parking lot lease on lots 18, 19 and 20. Through a series of conveyances not material to the issues before us, Dolores D. Kaye, the wife of Herman Kaye, acquired fee title to the medical building in the summer of 1960.

Prior thereto, Herman Kaye had purchased the interests of his partners in the medical building and to secure the purchase money obligation had executed a deed of trust in favor of Milton Greene, trustee for the selling partners, covering lots 15, 16 and 17 and the lessees' interest in the 50-year parking lot lease in lots 18, 19 and 20. On February 2, 1960 the owners of lots 18 through 28 leased all of these lots to AMA Corporation, as lessee "for the purpose of conducting therein a Hospital, and for no other purpose" for a term of 10 years. Mr. Kaye was the president of the lessee corporation and became the president and operating manager of the hospital. On October 1, 1960, AMA Corporation leased lots 18, 19 and 20 to Dolores D. Kaye, as lessee for a term of 10 years, to be used by her "in connection with her enjoyment and use of the Bradford Medical Building." In 1960 and 1961 Messrs. Kaye and Harris and their successors in interest in lots 15, 16 and 17 executed quit claim deeds to Dolores D. Kaye for the purpose of clearing those lots of the 50-year parking lot lease. When appellant purchased the medical building on May 4, 1962, all liens against lots 15, 16 and 17 were paid. Since payment of a debt extinguishes the security therefor, (Civ. Code, § 1473; *Singleton* v. *Hartford Fire Ins. Co.,* 127 Cal. App. 635 [16 P.2d 293] ; 34 Cal.Jur.2d, Mortgages and Trust Deeds, § 356, p. 24) the security interests of John Hancock Life Insurance Company and Milton D. Greene, trustees in the lessees' interest in the 50-year parking lot lease on lots 18, 19 and 20, were eliminated by appellant's purchase.

From the time it opened, the medical building was operated as practically part of the hospital. There was no pharmacy in the hospital. There was a pharmacy in the medical building

where the hospital pharmacist was employed and where the pharmacist filled all hospital patients' prescriptions. The hospital laboratory as well as the hospital radiologist were located in the medical building and did their work for the hospital from there. There was a restaurant in the medical building operated by Mr. Kaye. The kitchen facilities, food storage, main preparation of meals ("outside of short orders") for the hospital were in the medical building basement. The number of doctors in tenancy in the medical building varied from 12 to 24. A condition for rental to a doctor in the medical building was that he have staff privileges at the hospital.

The entire parking area between the medical building and the hospital was used jointly by tenants, employees and guests of both buildings. Doctors who were tenants in the medical building and did surgery at the hospital would park nearest the hospital and leave their cars there all day; several tenant doctors never parked anywhere except on the area near the hospital. Employees who, in connection with the hospital, prepared the food or worked in the pharmacy or in the laboratory, parked their cars, according to Mr. Kaye, "anywhere in the whole area, [i.e. lots 18-23] wherever they went to first that morning, they usually left it for the rest of the day just like the doctors." During hospital visiting hours, visitors parked on the entire area. Doctors who were not tenants of the medical building used lots 18, 19 and 20 for parking while on calls to the hospital.

 The evidence was sufficient to support a finding that unity of use and ownership existed as to Parcel 7 and lots 21 through 28 unless we must conclude, as a matter of law, that these unities could not exist by reason of the various parking lot leases that were outstanding against the property. No such conclusion is required.

 *Unity of Use.* Unity of use has been defined as "a connection or relation of adaptation, convenience, and actual and permanent use [such] as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used." (*City of Stockton* v. *Marengo,* 137 Cal.App. 760, 766 [31 P.2d 467].) Unity of use does not exist where the condemned parcel and the remaining parcel are used separately (*Sharp* v. *United States,* 191 U.S. 341 [48 L.Ed. 211, 24 S.Ct. 114]; *City of Menlo Park* v. *Artino, supra,* 151 Cal.App.2d 261, 270; *City*

*of Stockton* v. *Marengo, supra,* at p. 767), but is not necessarily defeated by the fact that the remaining parcel is not put to any independent use. (*People* v. *Thompson,* 43 Cal.2d 13, 26 [271 P.2d 507].)

▮ The evidence shows that Parcel 7 was used for the benefit of the hospital from the time the medical building was built in 1958 to the date of condition. The lessees under the 50-year lease of January 10, 1956, agreed that Parcel 7 was to be jointly used by the hospital and the medical building. The medical building was built and used for the benefit of the hospital and from 1960 on the hospital and medical building were under the same management. AMA Corporation, the lessee of the hospital, was also the master lessee of Parcel 7. Appellant argues that the sublease of Parcel 7 by AMA Corporation to Dolores D. Kaye gave her the exclusive right to use that area. As we have noted, the master lease to lots 18 through 28 held by AMA Corporation as lessee was "for the purpose of conducting therein a Hospital and for no other purpose." Mrs. Kaye, as sublessee, could have had no broader right to use the parking lot under the sublease than AMA Corporation had under the master lease. (*Baranov* v. *Scudder,* 177 Cal. 458 [170 P. 1122].) Therefore, the sublease could not have derogated from the right of the owners of the hospital to require that Parcel 7 be available for hospital parking. The existence of the sublease, therefore, does not compel a conclusion that there was diversity of use between Parcel 7 and the hospital property.

▮ *Unity of Ownership.* "[T]he fact that several tracts are owned by different persons does not preclude them from being regarded as one where they are contiguous and are used in common by the owners under a contract or other arrangement and each tract is more valuable by reason of that use than if used separately." (29A Corpus Juris Secundum, Eminent Domain, § 140, p. 595; *City of Stockton* v. *Ellingwood,* 96 Cal.App. 708 [275 P. 228] [separately owned contiguous parcels operated as a unit under partnership agreement]; *County of Santa Clara* v. *Curtner, supra,* 245 Cal.App.2d 730, 737 [owners of remaining parcel held equitable title to condemned parcel following their exercise of an option to purchase]; see also *State* v. *Carrow* (1941) 57 Ariz. 429 [114 P.2d 891] [recovery for severance damages approved to land held by condemnee under short term leases where condemned and damaged land operated as a cattle ranch]; *Petition of Mackie* (1966) 2 Mich.App. 572 [140 NW2d 781] [reversionary inter-

est of lessor in land subject to 10-year lease plus contiguity held sufficient connection between condemned parcel and remaining parcel to consider them as one parcel in assessing severance damages].)

Underlying the requirement of unity of ownership is the rule that there can be no recovery in condemnation where there has been no actual taking or severance of the claimant's property. (*People* v. *Symons,* 54 Cal.2d 855, 860 [9 Cal.Rptr. 363, 357 P.2d 451] ; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818].) ■ "The courts have not authorized a recovery under article I, section 14 of our state Constitution where there would be no recovery for damages caused by the construction of an improvement if undertaken by a private citizen on adjoining property." (*People* v. *Symons, supra,* 54 Cal.2d 855, 861-862.) Therefore, where the owner of the abutting land has no legal interest in the condemned land, unity of ownership has been held not to exist. (*People* ex rel. *Dept. of Public Works* v. *City of Los Angeles,* 220 Cal.App.2d 345, 362-363 [33 Cal.Rptr. 797] [abutting landowner had right to use condemned land under an agreement with four years remaining, but no interest therein] ; *East Bay Municipal Utility Dist.* v. *Kieffer,* 99 Cal.App. 240, 246-247 [278 P. 476, 279 P. 178] [unexercised option held insufficient interest to support severance damages to optioned land] ; *County of San Benito* v. *Copper Mountain Min. Co.,* 7 Cal.App.2d 82, 86 [45 P.2d 428] [no severance damage for loss of use of water on nearby property where condemnee had no right to the use of the water].) Although some courts have taken the view that unity of ownership does not exist unless the condemnee holds a fee interest in both the condemned and the remaining parcel (*United States* v. *Honolulu Plantation Co.* (9th Cir. 1950) 182 F.2d 172, 179 ; see 27 Am.Jur.2d, Eminent Domain, § 320, p. 143), we have not found any case where severance damages were disallowed on the ground that the fee owner of the remaining parcel held title to the condemned parcel subject to a lease.

■ Respondents Nyrin and U.L.C. Corporation held title in fee to both Parcel 7 and the adjoining hospital property. Although on the date of condition Parcel 7 was subject to various leasehold interests those leasehold interests were, by agreement between the owners and lessees, to be used, and in practice were used, for the benefit of the hospital. We conclude, therefore, that the requisite unity of ownership was present. *City of Stockton* v. *Marengo, supra,* 137 Cal.App.

760, is not, as appellant contends, authority to the contrary. In *Marengo*, the land taken was farm land, and two lots in the remainder were leased for service station purposes. The gas station was held not to be part of the larger parcel for the reason that it was used for a separate and distinct purpose from the farm land. The fact that the gas station was under lease was not determinative in the case.

*The Ruling that the Hospitals had, on the Date of Condition, the Number of Parking Spaces Required by the Zoning Ordinance.*

In the valuation phase of the trial the court ruled that on the date of condition the hospital had the number of parking spaces required by the applicable zoning ordinance,[2] and so instructed the jury. Relying on this ruling respondents' two expert witnesses testified that on the date of condition the hospital conformed to the zoning requirement because it had available for its use 96 parking spaces whereas after the taking it did not so conform because the number of available parking spaces was reduced to 50. The loss of these available parking spaces was, according to them, the principal cause of severance damages which they estimated to be $331,500 and $329,750 respectively.

In support of its contention that this ruling was erroneous, appellant asserts that the ruling could only have been premised upon a determination by the court that the various leasehold interests in Parcel 7 had been extinguished by the purchase of the medical building by appellant on May 4, 1962. Appellant then argues that consideration by the court of the effect of such purchase was error because ''steps taken by the condemnor in acquiring property for the proposed improvement may not be considered as they affect valuation of the condemned land in its before condition.''[3]

As we view the record there was sufficient evidence to support the ruling of the trial court that the hospital had

[2] The ordinance was not offered or received in evidence. Its pertinent terms were embodied in the following stipulation phrased in the language of the court: '' As I understand it, there were zoning regulations in effect as of August the 17th, 1962, which required that a hospital such as this operating in the zone that it operated in must have one and a half parking spaces available for use of its patrons to each bed.''

[3] Appellant refers to the rule of law which denies to the condemnee the benefit of any enhancement in value that may result from the construction of a public improvement where it is certain that his land will be taken for the improvement. (4 Nichols, *supra*, § 12.3151; 1 Orgel, Valuation Under Eminent Domain, §§ 99, 100; 147 A.L.R. 66.)

available to it on the date of condition the number of parking spaces required by the zoning ordinance even though some of the parking area between the hospital and medical building was on that date also being used by tenants of the medical building and their visitors. The court could reasonably have concluded that since the medical building was operated to a large extent as an adjunct of the hospital, parking spaces reserved for use by tenants and visitors of the medical building were available to the hospital within the meaning of the zoning ordinance. Therefore, we do not accept appellant's contention that in ruling that the hospital conformed to the zoning law the trial court necessarily found that the leasehold interests in Parcel 7 had been eliminated by the acquisition of the medical building by appellant.

During the trial, in support of their position that the hospital conformed to the zoning law on the date of condition, respondents sought to prove that they had conformed since the enactment of the zoning law in 1958. In response to appellant's objection the court ruled that the hospital did not conform in 1958 because "there was a lease which gave this parking lot to somebody else." Appellant argues that the only change in the use of the parking area between 1958 and the date of condition was the acquisition by appellant of the medical building in 1962 and that therefore the trial court must have considered the effect of that acquisition in ruling that the hospital conformed to the zoning law on the date of condition. It may be that appellant correctly analyzes the reasoning of the trial court, but we are not bound by that reasoning. As we have shown above, the ruling that the hospital conformed to the zoning law as to parking on the date of condition was reasonable in the light of the evidence concerning the use of the medical building facilities by the hospital and its staff doctors. The ruling was therefore correct in law and will not be disturbed on appeal because it may have been given for a wrong reason. (*Davey* v. *Southern Pac. Co.,* 116 Cal. 325, 329 [48 P. 117].)

*The Refusal of the Court to Rule that Appellant Did Not Have Authority to Acquire the Whole of Parcel 7.*

After the court ruled that Parcel 7 was part of a larger parcel, appellant moved the court for a ruling that appellant had no authority to acquire the portion of Parcel 7 that lay outside the right of way line on the ground that there was no public use for such portion. In support of its motion appellant argued that only the part of Parcel 7 lying within

the right of way line was needed for the improvement and that the remainder had been included in the take because it had little value to its owners and would give rise to claims of severance damage. Appellant offered to prove that the sole public use for the remainder of Parcel 7 was to accomplish the purposes specified in section 104.1 of the Streets and Highways Code (see fn. 1). Appellant asked that its motion not be interpreted by the court as a partial abandonment under Code of Civil Procedure, section 1255a. The court denied the motion and refused the offer of proof.

The resolution of the California Highway Commission stating that public interest and necessity required the acquisition of the whole of Parcel 7 was in evidence at the request of appellant. The finding of the commission that all of Parcel 7 was needed for the freeway was binding upon the court in the absence of proof that the commission had acted in bad faith and abused its discretion in making this finding. (*People* v. *Chevalier*, 52 Cal.2d 299, 304 [340 P.2d 598] ; *People* v. *Lagiss*, 223 Cal.App.2d 23, 36 [35 Cal.Rptr. 554].) Appellant does not assert its own bad faith as a reason why the court should reexamine the finding of the commission that all of Parcel 7 was needed for a public use. The motion of appellant presented no justifiable issue and therefore was properly denied.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.

A petition for a rehearing was denied December 21, 1967.