[Civ. No. 34904. Second Dist., Div. Two. June 23, 1970.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. HOME TRUST INVESTMENT CO., et al., Defendants and Appellants.

**COUNSEL**

Ball, Hunt, Hart & Brown, Ball, Hunt, Hart, Brown & Baerwitz and Clark Heggeness for Defendants and Appellants.

Harry Fenton, Joseph A. Montoya, Charles E. Spencer, Jr., Ira W. Holroyd and Benjamin B. Salvaty for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Home Trust Investment Company and Bixby Hills Investment Company appeal from a judgment entered pursuant to a jury award of $526,000 as just compensation for condemnation of land to be used for freeway purposes.

On November 14, 1966, the date respondent filed its complaint in eminent domain, appellants were the owners of two large tracts of land (Tracts 21067 and 23482) in Long Beach. The proposed freeway was projected on Seventh Street, the southern boundary of the property. The property consisted of 288 R-1 zoned lots situated between Seventh Street and the Los Cerritos Drain, several R-3 zoned lots located north of the Los Cerritos Drain, and a large R-4 zoned lot situated north of Seventh Street and west of the R-1 property. The R-1 property is approximately bisected by Bixby Hill Road, which parallels Seventh Street to the north.

Appellants' property had been subdivided to become "a luxury class residential community." At the time this action was filed, several model

homes had been constructed and some paving and curbing was completed. It appears that all of the improvements were located along Bixby Hill Road, and that no improvements had been made in the southern portions of the property along Seventh Street.

The portions of the property condemned were 22 full and nine partial lots, some portions which were to become streets in the subdivision, and a small corner of the R-4 property. Predicated upon a stipulation supplemented by oral evidence the court determined which portions of the property should be considered the larger parcel for the purpose of determining severance damages. The determination was that the R-4 lot which consisted of eight and one-half acres, was the larger portion from which the small corner was taken, and that the southern half of the R-1 property (from Bixby Hill Road) was the larger portion from which the R-1 lots were taken. This determination is not questioned on appeal.

Appellants argue that rulings of court prejudicial to them misled the jury as a consequence of which less than just and reasonable compensation was allowed for the condemned property.

■ Appellants urge that they were improperly denied the right to show that additional damages would accrue because of delay in the construction of the proposed freeway since no construction was planned until the mid-1970's. All appraisers were instructed to assume for the purpose of estimating damages that damages were to be fixed as of the date that the complaint was filed, i.e., November 14, 1966. The court, however, did permit appellants' appraiser to present to the jury his opinion of costs which properly and necessarily would be incurred by the resubdivision of appellants' property caused by the condemnation proceeding. Appellants cite no authority for their position. ■ Section 1248 of the Code of Civil Procedure implies and California cases have established that the proper valuation date is the date of the commencement of the action. "[T]he state 'could have fixed the time when the property was "taken" ' by instituting, as early as it chose, an action to condemn whatever interest [appellant] owned in the property in issue. In this fashion it could have set the date of valuation at the date the summons was served and required [appellant] to accept such damages as might have been awarded by a verdict predetermining the impact of the projected freeway upon [appellants'] property even before any actual construction had been undertaken." (*Pierpont Inn, Inc.* v. *State of California,* 70 Cal.2d 282, 293 [74 Cal.Rptr. 521, 449 P.2d 737]; *People* ex rel. *Dept. of Public Works* v. *Schultz Co.,* 123 Cal.App.2d 925, 933 [268 P.2d 117].)

■ Further, appellants made no explanation or showing of how

they have been damaged. The court found that the state offered to stipulate that it would "construct the frontage road and storm drain facilities at whatever time the development of the R-1 properties requires on the demand of defendants and to proceed with due diligence with such construction; said construction to be at state expense either by the state or defendants at defendants' option. . . ." This offer was never withdrawn, nor was it presented to the jury.

In their reply brief, appellants have attempted to distinguish two types of delay which caused them damage. In addition to the delay in the construction of the freeway, they urge that they were damaged because of a "delay" in revealing the state's plans, which included the frontage road and type of access to the property, between the time of the filing of the complaint on November 14, 1966, to the time of hearings to determine the larger parcel in August 1967. Because the complaint did not reveal that the property would be served by a new access road, they argue, they were forced to assume that the only access to the property would be from the north. In fact, however, appellants have at no time attempted to demonstrate in what manner or to what extent they were damaged by this particular period of delay. As respondent correctly points out, appellants made no attempt to discover the plans, nor have they even suggested they relied in any way on the complaint to their detriment.

The jury found special benefits to the R-4 property of $375,000 and $1,000 damages. Special benefits of $242,000 and damages of $75,000 were assessed for the R-1 property. Since benefits are offset only against severance damages (Code Civ. Proc., § 1248), and since the state offered to mitigate any damages resulting from delay in construction of the freeway, appellants have clearly failed to show any injustice. (Cf. *People* v. *Ayon,* 54 Cal.2d 217, 228 [5 Cal.Rptr. 151, 352 P.2d 519]; *People* ex rel. *Dept. of Public Works* v. *Schultz Co., supra,* at p. 930.)

Appellants next contend that the court erroneously refused to allow them to examine the full appraisal report of one of the state's expert witnesses. It is claimed that this refusal prevented adequate cross-examination of the witness who stated that he had not testified to any conclusions not contained in his report. Appellants concede that they could have obtained the full report by deposition, which they did not do, and the record also shows that the court directed that appellants' counsel be shown "any paper referred to by the witness in the course of his examination."

Appellants urge prejudicial error because the jury by a court ruling was told to disregard appellants' evidence on damage resulting from impaired access to the R-4 property. The evidence showed that the freeway

and frontage road would add approximately one-third of a mile to the distance of a person traveling from the subdivision to the east. Whether public improvements cause substantial impairment of access is a question for the court rather than the jury. (*People* v. *Ricciardi*, 23 Cal.2d 390, 402-403 [144 P.2d 799]; *People* ex rel. *Dept. Pub. Wks.* v. *Becker*, 262 Cal.App.2d 634, 639 [69 Cal.Rptr. 110].) A property owner "cannot demand that the adjacent street be left in its original condition for all time to insure his ability to continue to enter and leave his property in the same manner as that to which he has become accustomed. Modern transportation requirements necessitate continual improvements of streets and relocation of traffic." (*People* v. *Ayon*, 54 Cal.2d 217, 223 [5 Cal.Rptr. 151, 352 P.2d 519]; *City of Berkeley* v. *Von Adelung*, 214 Cal.App.2d 791, 793 [29 Cal.Rptr. 802].) The trial court did not abuse its discretion in determining that access to appellants' property was not substantially impaired and therefore not compensable.

■ Appellants next contend that it was error to allow respondent's expert to testify to sales of raw acreage because they were not "comparable" to the lots in question. (Evid. Code, § 816.) The testimony was not offered to show comparable values. None of the appraisers was able to find comparable land sales. Rather, each appraiser either devalued the estimated value of finished lots or estimated an additional value to undeveloped land to account for the small improvements which were in progress on the land in question. When parties concede as was done at bench that there are no comparable sales, the discretion of the trial court to allow testimony showing the basis of an expert's opinion is necessarily and should be broad. (Code Civ. Proc., § 1248; *People* ex rel. *Dept. Pub. Wks.* v. *Nyrin*, 256 Cal.App.2d 288, 292 [63 Cal.Rptr. 905]; *County of Los Angeles* v. *Union Distributing Co.*, 260 Cal.App.2d 125, 129 [67 Cal.Rptr. 107].) At bench, this discretion was fairly and properly exercised and appellants fail to show any injustice.

■ Appellants' next assignment of error is that the trial court improperly allowed testimony presented by respondent concerning special benefits to both the R-1 and R-4 properties. Respondents' witness allocated $275,000 of the R-1 property special benefits and a portion of the R-4 special benefits to "improved access." The basis of the improved access was that the volume of traffic on Seventh Street would be reduced and the hazards of driving would be lessened by the freeway which in turn would lead a reasonable buyer to pay more for lots in the subdivision. ■ Appellants do not question the rule that "Benefits resulting from an access road that enhances the convenient ingress to and egress from [their] property constitute special benefits for which a jury may properly award

an allowance." (*People* ex rel. *Dept. Pub. Wks.* v. *Bond,* 231 Cal. App.2d 435 [41 Cal.Rptr. 900].) Rather, appellants primarily rely on the argument that these benefits could not be considered because they were general rather than specific. ■ Although it has been the rule that general benefits to the community may not be considered to reduce severance damages (*Pierpont Inn, Inc.* v. *State of California, supra,* at p. 296; *Beveridge* v. *Lewis,* 137 Cal. 619 [67 P. 1040, 70 P. 1083]), the trier of fact may consider special benefits which result "from the entire scheme of improvement. . . ." (*People* ex rel. *Dept. of Public Works* v. *Hurd,* 205 Cal.App.2d 16, 25 [23 Cal.Rptr. 67]; *Sacramento etc. Drainage Dist.* v. *W. P. Roduner Cattle etc. Co.,* 268 Cal.App.2d 199, 205 [73 Cal.Rptr. 733].) The jury was properly instructed concerning special benefits and its findings will not be reversed on review absent a showing that there was no substantial evidence upon which such findings were based. (*Pierpont Inn, Inc.* v. *State of California, supra,* at p. 294; *Sacramento etc. Drainage Dist.* v. *W. P. Roduner Cattle etc. Co., supra,* at pp. 207-208; *People* ex rel. *Dept. Pub. Wks.* v. *Nyrin, supra,* at p. 292.)

■ Finally, appellants complain that a state expert improperly and prejudicially testified to conditions which the state might or would impose on appellants' properties to connect them to Seventh Street if the freeway were not constructed. This testimony, it is said, unfairly devaluated appellants' property. Appellants cite, and we have found, no authority that testimony by a properly qualified witness, in this case the state highway design engineer for Seventh Street, is inadmissible on the question of probable required expenses in developing property in the absence of a proposed improvement. (Cf. *People* ex rel. *Dept. Pub. Wks.* v. *Arthofer,* 245 Cal.App.2d 454, 463 [54 Cal.Rptr. 878].) No abuse of the wide discretion of the trial court has been shown by appellants.

The judgment is affirmed. Respondent and appellants to bear their respective costs on appeal.

Herndon, J., and Fleming, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 19, 1970.