George D. SAUVAGEAU and Francis Sauvageau, Plaintiffs/Appellees,

v.

Walter R. HJELLE, North Dakota State Highway Commissioner, Defendant/Appellant.

Civ. No. 8853.

Supreme Court of North Dakota.

Dec. 5, 1973.

Jos. A. Vogel, Sp. Asst. Atty. Gen., State Highway Dept., Bismarck, for appellant.

Wattam, Vogel, Vogel & Peterson, Fargo, for appellees.

KNUDSON, Judge.

This is an appeal by Walter R. Hjelle, the State Highway Commissioner [hereinafter Commissioner], from the judgment in a condemnation proceeding brought by the Commissioner to acquire certain land for the right of way for Interstate Highway 29.

The Commissioner sought to acquire a right of way in the W-½ NW-¼ of Section

14 and to take immediate possession thereof by making an offer to purchase 24.11 acres of land from brothers George D. and Francis Sauvageau, depositing in the office of the clerk of the district court of Cass County the amount of such offer, $8,764.00, as provided by Section 14 of the North Dakota Constitution.

George D. and Francis Sauvageau, claiming that the offer of the Commissioner "is wholly inadequate and does not represent the fair market value of the property taken nor does it make allowance for proper resulting consequential and severance damages to the remaining property not taken," appealed to the district court as provided by § 24–01–22.1, North Dakota Century Code, and demanded a jury trial on the question of damages. The jury returned a verdict in favor of the Sauvageaus for $39,677.75, consisting of $12,657.-75 for the value of the land actually taken, $10,100.00 in severance damages, and $16,920.00 in consequential damages. The court ordered judgment for $51,654.98, including the jury award, costs, expert witness fees, interest and attorney fees of $10,304.78. This appeal is from that judgment.

George D. Sauvageau owns an interest in four tracts of land, all located in Township 138 North, Range 49 West, Cass County. He is the sole owner of the NE-¼ of Section 15, which is the homestead of George and his wife, Marie Sauvageau [hereinafter the home place]. He and his brother, Francis, own as joint tenants the W-½ NW-¼ of Section 14, a tract of approximately 80 acres. George and Marie own, as joint tenants, the SE-¼ of Section 11 and the NW-¼ of Section 13. It is not disputed that "for a number of years" the four tracts have been farmed as a unit by George Sauvageau and his wife, Marie. It appears that Francis Sauvageau does not actively participate in farming the 80-acre tract. Though no testimony is found in the record directly so stating, all inferences point to that conclusion.

All four tracts abutted on an east-west gravelled road which, prior to the taking, provided access to all portions of the farm unit, except the south part of the 80-acre tract. The 80-acre tract was traversed in a general southwest-northeast direction by Rose Coulee, a natural watercourse approximately one and one-half to three feet deep, which, for approximately three-fourths of the year, prevented access to that part south of Rose Coulee from the north part. Access to the south part was provided by a north-south township road along the west side.

The right of way of I–29 acquired by the Commissioner separated the home place lying on the west side of I–29 from the other tracts lying east of I–29, and left that part of the 80-acre tract lying south of Rose Coulee landlocked and inaccessible, without access to a public road, as the north-south township road became a service road on the west side of I–29. There remained of the 80-acre tract approximately 12 acres north and 43.89 acres south of the coulee after the taking. Access to that part south of the coulee will require the construction of a crossing over the coulee.

The Commissioner raised three issues in his brief, as follows:

I. Does § 32–15–22(2), N.D.C.C., permit an award of severance damages to the remainder from which no part was taken where four parcels of land lacked contiguity, unity of ownership, but were farmed as a unit?

II. Does § 32–15–22(3), N.D.C.C., require showing that consequential damages for the loss of access be not only greater in degree but also different in kind from those suffered by the public generally?

III. In awarding attorney fees, should the Trial Court restrict its consideration to the difference between the original deposit and award by the Jury?

The three issues raised by the Commissioner will be considered separately.

First, he asks whether § 32–15–22(2), North Dakota Century Code, will permit an award of severance damages to remaining land from which no part was taken where, as he contends, four parcels of land lack contiguity and unity of ownership, but are farmed as a unit.

The Section cited provides:

The jury, or court, or referee, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

.    .    .    .    .    .

2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff;

.    .    .    .    .    .

■ The Commissioner first urges that the word "parcel" in subsection 2 refers, in this case, only to the 80-acre tract; and that therefore the 80-acre tract may not be considered as part of a larger unit in considering severance damages. We believe, however, that such a narrow construction of the statute is not warranted.

The Commissioner refers us to California case law. Subsection 2 of our statute is based upon the California eminent domain statute, West's California Code, Civil Procedure, § 1248, and contains the exact same language as our subsection 2.

■ The California Supreme Court has said with respect to this subsection, (1) that what constitutes a parcel of land in contemplation of subdivision 2 is essentially a question of law, but may involve issues of fact; People v. Nyrin, 256 Cal. App.2d 288, 63 Cal.Rptr. 905 (1967); (2) that severance damages can only be allowed where there is unity of use between

the parcel condemned and the parcel retained; Hemmerling v. Tomlev, Inc., 67 Cal.2d 572, 63 Cal.Rptr. 1, 432 P.2d 697 (1967); and (3) that to constitute unity of property between two or more contiguous but prima facie distinct parcels of land, so as to entitle a landowner to severance damages, "there must be such connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used." City of Menlo Park v. Artino, 151 Cal.App.2d 261, 311 P.2d 135 (1957); City of Stockton v. Marengo, 137 Cal.App. 760, 31 P.2d 467 (1934).

California, at least, does not appear to limit severance damages to the single parcel from which the land taken is severed.

Neither has this Court placed so narrow a reading on the statute. In O'Connell v. Hjelle, 143 N.W.2d 251 (N.D.1966), we stated in our syllabus that:

Use as a unit of property owned wholly by husband and wife and other property owned jointly by husband, wife, and husband's parents, could be considered in fixing fair market value of that part of property owned wholly by husband and wife which was condemned and amount of severance damages to the remainder of property owned wholly by husband and wife.

In that case a husband and wife owned several parcels of land. A number of other parcels were owned by the husband and wife jointly with the parents of the husband. All the parcels were operated as a single unit. The Commissioner condemned part of several parcels owned by the husband and wife only. There the trial court denied the Commissioner's motion to exclude any evidence of damages to lands owned jointly with the husband's parents. We upheld that decision on appeal.

Our holding there is equally applicable to this case. If in fact there was sufficient unity between the parcels so that they constitute one unit, then the award of severance damages based on the unit as a whole was permissible. The taking, under those circumstances, would be from the unit as a whole rather than from the 80-acre tract alone.

We must next proceed to the question of unity.

The Commissioner contends that the four parcels here lacked unity of ownership and contiguity; and that therefore there is no unity in the tracts here which will support an award of severance damages.

There is no single rule or principle established for determining the unity of lands for the purpose of awarding damages in eminent domain cases. While generally there must be unity of title, contiguity of use, and unity of use, under certain circumstances the presence of all of these unities is not essential. Usually unity of use is given the greatest emphasis, and it has been called the controlling and determining factor. 29A C.J.S. Eminent Domain § 140, p. 591, and numerous cases cited therein.

The Commissioner contends there is neither unity of ownership nor unity of contiguity in this case. We will consider each facet separately.

Generally speaking, in order to allow severance damages for a portion of a parcel or parcels of land claimed as a single unit taken by condemnation, there must be unity of ownership between the part taken and the remaining part. 95 A.L.R.2d 887, 890, § 2.

And where a tract of land taken by condemnation is held by two persons as co-tenants or tenants by the entirety, and the severances damages allegedly caused by the condemnation are claimed as to an adjoining tract which is solely owned by one of the owners of the condemned tract, there

is a division of authority. 95 A.L.R.2d 897, § 6(b). Some cases hold that the unity of ownership between the two tracts is not sufficient to support an award of severance damages. Duggan v. State, 214 Iowa 230, 242 N.W. 98 (1932); Tillman v. Lewisburg & N. R. Co., 133 Tenn. 554, 182 S.W. 597, L.R.A.1916D, 259 (1916). Other cases hold that the same quantity or quality of interest or estate in all portions of a tract is not essential. 29A C.J.S. Eminent Domain § 140, p. 595. Cited in support of that proposition are Barnes v. North Carolina State Highway Commission, 250 N.C. 378, 109 S.E.2d 219 (1959); and State ex rel. LaPrade v. Carrow, 57 Ariz. 429, 114 P.2d 891 (1941).

The record here shows that George D. Sauvageau owned an interest in all four tracts—sole ownership in the home tract, joint ownership with his brother, Francis, in the 80-acre tract, and joint ownership with his wife, Marie, in the remaining two tracts.

There is no evidence that Francis Sauvageau has ever actively participated in farming the 80-acre tract.

Marie Sauvageau appeared pursuant to statutory authorization granted by § 32–15–20, N.D.C.C., and claimed an interest in all four tracts—joint ownership with her husband of the SE¼ of Section 11 and the NW¼ of Section 13, a statutory interest in the home place as the family homestead, and an interest in the 80-acre tract by virtue of her continued assistance in operations on it for 38 years.

All evidence shows that the tract has been farmed by George D. Sauvageau and his wife, Marie, as part of one unit consisting of four tracts. We conclude that upon these facts the continuous use of the 80-acre tract as an integral part of the farm unit establishes sufficient identity of ownership to support the jury's conclusion that the entire farm was one unit.

We next treat the question of contiguity as it relates to use. While certain of our

cases involve noncontiguous land utilized as a unit (see O'Connell v. Hjelle, 143 N. W.2d 251 (N.D.1966), and Minnkota Power Co-Operative v. Bacon, 72 N.W.2d 880 (N.D.1955)), in none has the question been directly presented whether damages may be awarded in a condemnation action to noncontiguous lands which are utilized as a unit. The *O'Connell* decision centered upon unity of ownership, in its relation to unity of use; no direct reference to the question of contiguity was raised as error, and this Court did not decide that question.

Perhaps the classic federal case on the question of contiguity is Baetjer v. United States, 143 F.2d 391 (1st Cir. 1944), cert. denied 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618. There, the federal government condemned two tracts of land on an island ten miles east of Puerto Rico. The two tracts were owned by a trust which raised sugar cane on the tracts, transported the cane to Puerto Rico, where it was processed in facilities also owned by the trust. The trust claimed damages to the entire business. From denial of that claim, the trust appealed. The First Circuit Court of Appeals ruled that if the tracts were united in use, compensation would be required. The Court stated, in part, at page 395:

Contiguous tracts may be "separate" ones if used separately [citation omitted] and tracts physically separated from one another may constitute a "single" tract if put to an integrated unitary use. . . .

.  .  .  .  .  .

Integrated use, not physical contiguity, therefore, is the test. Physical contiguity is important, however, in that it frequently has great bearing on the question of unity of use. Tracts physically separated from one another frequently, but we cannot say always, are not and cannot be operated as a unit, and the greater the distance between them the less is the possibility of unitary operation, but separation still remains an evidentiary, not an operative fact, that is, a subsidiary fact bearing upon but not necessarily

determinative of the ultimate fact upon the answer to which the question at issue hinges.

■ DiVirgilio v. State Road Department, 205 So.2d 317, 320 (Fla.1967), contains the following analysis of contiguity as it relates to use:

In considering the remaining factors of use and contiguity, several patterns are discernible. First, if the lands are only nominally divided they will be treated as a unit unless actually devoted to such divergent uses that they take on the character of separate properties. See annotation 6 A.L.R.2d 1197, § 2(a).

Second, where the contiguity is disturbed only by an easement, the underlying fee remaining in the condemnee, and the portions are not used in a wholly different manner, they will be regarded as actually contiguous and can be treated as one parcel. Barnes v. North Carolina State Highway Commission, supra [250 N.C. 378, 109 S.E.2d 219 (1959)].

Third, where there is an actual physical division of the property but the parts are devoted to an integrated use and they lie in such proximity as to be in effect united, the property may be regarded as one unit, Barnes v. North Carolina State Highway Commission, supra; annotation 6 A.L.R.2d 1197, § 2(c).

The court there was attempting to determine what was meant by the term "adjoining property" under its statute, F.S.A. § 73.071(4). It devised the following rule:

Where a condemnee owns land contiguous to that taken it is prima facie adjoining property. He who would assert otherwise must show that different portions of the land are so totally devoted to divergent uses that they take on the character of separate tracts. Conversely, where there is a physical separation of tracts, they are prima facie distinct but may be treated as one parcel upon proof of proximity and an integration of use so substantial that they in effect are one.

■ We believe this test is a sound one. Integration of use is not disputed in this case. With respect to proximity, the record establishes that prior to the taking the home place was separated from the 80-acre tract by a section line. The SE¼ of Section 11 commences approximately one-half mile east of the 80-acre tract, and is itself separated from the NW¼ of Section 13 by a township road. All four tracts are encompassed within a geographic area measuring two miles from east to west and one mile from north to south.

We are led to the conclusion that the evidence establishes sufficient contiguity to support, under proper instructions, a jury conclusion that the entire farm was one unit.

In its instructions to the jury, the trial court said:

The appellants, George D. Sauvageau and his wife are the owners of other tracts of land, no part of which was taken, but which they contend were used and farmed by them as a unit with said [condemned property]. If, under the evidence and these instructions, you find that the said lands owned by George D. Sauvageau and his wife are part of such farm unit, and that the taking of said [condemned property] by the State damages the said lands owned by George D. Sauvageau and his wife in said unit, you will assess such damages in your verdict.

■ The jury, having determined under proper instruction that the four tracts constituted one unit, this Court will not intervene.

■ We are convinced that subsection 2 of § 32–15–22, N.D.C.C., permits an award of damages in a situation of this nature; and that the jury may correctly conclude that the "parcel," part of which was severed, was the 80-acre tract viewed as part of an entire unit, there being sufficient evidence of contiguity and unity of ownership.

As his second issue, the Commissioner asks whether § 32–15–22(3), N.D.C.C., requires that consequential damages be not only greater in degree but also different in kind from those suffered by the public generally.

■ More specifically, he contends that the only damage shown was loss of access; and that loss of access is an insufficient basis upon which to award consequent damages, because such damage is not different in kind from that suffered by the public in general.

In King v. Stark County, 67 N.D. 260, 271 N.W. 771 (1937), this Court held in syllabus 2:

. . . the State and its agencies are liable for consequential damages to property arising from the construction of public works where there is some direct physical disturbance of a right either public or private which the owner enjoys in connection with his property and which gives to it additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.

And at page 774, we added:

And the diminution in value of property resulting from the acts complained of is special and peculiar within the meaning of the rule.

■ In paragraph 2 of the syllabus of Chandler v. Hjelle, 126 N.W.2d 141 (N.D. 1964), we said:

While the owner of property abutting on a highway, a portion of which is taken by the State under the power of eminent domain for highway purposes, does not have an absolute and unrestricted right to ingress and egress at all points, such owner is entitled to reasonable and convenient access to his property considering all of the uses to which the proper-

ty is adaptable and needed or likely to be needed in the reasonably near future.

■ The evidence shows that the market *value of the property* to any prospective purchaser will be diminished by the following combination of factors: (1) Isolation of the home place from the remaining tracts in the farm unit, which, to be economical, must be farmed as a unit; (2) circuity of travel; and (3) the required construction of a crossing over Rose Coulee. These are all damages which are different in kind from those suffered by the public in general.

A reasonably prudent man would, we believe, take these factors into account when forming a judgment as to the market value of the Sauvageau unit.

■ Loss of pre-existing access to property, part of which is taken, is compensable where the loss of access combined with other factors obviously reduces the market value of property to a prudent prospective purchaser of that property. Such damages are those within the contemplation of King v. Stark County, *supra,* and the jury's award of such damages must be upheld on appeal.

The Commissioner contends that consequential damages were awarded for loss of access by Mrs. Marie Sauvageau. This is not the case. The award was made to George D. and Francis Sauvageau. Mrs. Marie Sauvageau appeared pursuant to statutory authorization to claim an interest in all four tracts, but there was no award to her directly.

Both parties state that consequential damages are limited to only those instances where no property is taken. However, in Little v. Burleigh County, 82 N.W.2d 603, 608 (N.D.1957), we said that consequential damages may be awarded whether or not property is taken in construing § 32–15–22, N.D.C.C., as follows:

The above statute makes a distinction between damages due and damages not due to the taking of property.

.    .    .    .    .    .

Paragraph 2 provides for severance damages, that is to say, the depreciation in market value of the remainder of a parcel, caused by the severance of the part taken.

The foregoing constitute damages due to the taking itself.

Paragraph 2 . . . further provides for consequential damages to the remainder *not* due to the taking itself but arising by reason of the use to which the part taken has been put, that is, to the "construction of the improvement" thereon. Thus, under paragraph 2, damages may include not only severance damages but also consequential damages.

Paragraph 3 provides, in effect, for consequential damages, with reference to which the problem of differentiating between damage that is due and damage that is not due to the "taking" chiefly arises, inasmuch as such damages are never due to the "taking". Instead, they always arise from injury to other property, though no part thereof is actually taken. Consequential damages, allowable under paragraph 3, arise from injuries to other property not actually taken, caused by the construction of the public improvement.

In Court syllabus paragraphs 9 and 10 of Little v. Burleigh County, *supra,* we held:

9. Paragraph 2 of NDRC 1943, 32–1522 provides, in effect, for (a) severance damages for the depreciation in market value of the remainder of a parcel, caused by severance of the part taken, and (b) consequential damages to the remainder, not due to the taking itself, but arising by reason of the use to which the part taken has been put, or by reason of the construction of the improvement thereon.

10. Paragraph 3 of NDRC 1943, 32–1522 provides, in effect, for "consequential damages", arising from injuries to

other property not actually taken, caused by the construction of the public improvement.

◼ Thus subsection 2 of § 32–15–22 authorizes the awarding of compensation, when property is taken, for both severance damages due to the taking and consequential damages *not* due to the taking, the consequential damages arising from the construction of the improvement.

◼ Subsection 3 of § 32–15–22 authorizes the awarding of compensation, when property is not taken, for consequential damages arising from injuries to property, though no part thereof is taken, which will be damaged by the construction of the proposed improvement.

◼ The final issue raised by the Commissioner concerns attorney's fees. He asks whether, in awarding attorney fees, the trial court should restrict its consideration to the difference between the original deposit and the jury award.

The statute, § 32–15–32, N.D.C.C., provides that in a condemnation action, "the court may in its discretion award to the defendant reasonable actual or statutory costs or both, which may include . . . reasonable attorney's fees for all judicial proceedings."

◼ In United Development Corporation v. State Highway Department, 133 N.W.2d 439, 441 (N.D.1965), we held in Court syllabus paragraph 10:

In eminent-domain proceedings in this State, where the Legislative Assembly has made provision for reasonable costs, "which may include reasonable attorney's fees," such attorney fees taxed against the losing party are limited to a fair and reasonable amount to be determined by the trial court in its discretion. In arriving at such reasonable attorney fees, various factors are to be considered by the court, including the amount and the character of the services rendered, the

results obtained, the customary charge for such services, and the ability and skill of the attorney rendering the services.

◼ We held in Morton County Board of Park Commissioners v. Wetsch, 142 N.W.2d 751 (N.D.1966), at syllabus paragraph 3, which we followed in Municipal Airport Authority of City of Fargo v. Stockman, 198 N.W.2d 212 (N.D.1972):

Where a trial judge presided at the trial, had knowledge of the character of the litigation, observed the skill of the presentation, received evidence of the preparation for trial, and had knowledge of the results obtained, and having considered these factors coupled with his own knowledge and experience, made an award of attorney's fees as being reasonable, such determination will not be overturned on appeal in the absence of an affirmative showing that the trial court abused its discretion.

The appellate court will not interfere with rulings on discretionary matters unless an abuse of discretion is shown, which abuse must be a manifest abuse. Bartholomay v. St. Thomas Lumber Co., 124 N.W.2d 481 (N.D.1963). The burden of showing such error and establishing affirmatively that the trial court abused its discretion rests upon the appellant Commissioner. Morton County Board of Park Commissioners v. Wetsch, 142 N.W.2d 751, 753, and numerous cases cited therein.

The Commissioner contends that the trial court ruled as a matter of law that all four tracts constituted one unit and that the State, as a result, was forced to reappraise the land. In effect, he asks this Court to find, as a matter of law, that "the result obtained" was to raise the award from $24,333 (the amount of damages determined by the State's reappraisal) rather than from $8,764 (the deposit) to the final award of $39,677.

The record does not support the contention of the Commissioner that the trial

court ruled as a matter of law that the four tracts constituted a unit. In addition to the jury instructions with regard to unity of the tracts, the trial court instructed the jury as follows:

The Court's instructions on the meaning of severance and consequential damages is not to be taken in this case as a recognition that such damages exist. Whether or not severance or consequential damages exist and whether they are directly, materially and proximately caused by the taking are purely questions of fact for determination by the jury.

The trial court's memorandum opinion with respect to attorney's fees, after citing the admonition contained in Morton County Board of Park Commissioners v. Wetsch, 136 N.W.2d 158 (N.D.), contains the following statements:

. . . at the onset, we are faced with the position of the State that the issue of damages was restricted to an area of 80 acres. The owners then had the burden of proving that the element of damages encompassed an area substantially larger than that contemplated by the deposit . . . .. This, in the opinion of the Court, was accomplished by the evidence presented by the owners so as to create a question of fact . . . ..

Under these circumstances, the owners are entitled to just, fair and reasonable costs for attorney's fees which were incurred by them in order to accomplish the results attained . . . .. The owners should not be penalized or deprived of their just dues because of the State's initial failure to fully recognize and appreciate the extent of the damages incurred by the taking. This initial failure was carried through by the State during the entire case in chief of the owners until rectified by the introduction of evidence by the owners which created a jury question as hereinbefore indicated.

. . . . . .

Considering all of the applicable factors as above stated to the instant action, the Court is of the opinion from the showing made by the attorneys for the owners that a just and reasonable fee for said attorney's fees on behalf of his client is in the sum of $10,304.58.

The record supports the position that the Commissioner's original deposit was based on an erroneous appraisal. We cannot say as a matter of law, based upon the record here, that the subsequent increase in appraised valuation by the Commissioner was not due to the skill, knowledge, experience and efforts of the counsel for the landowners, showing the need for an increase in the deposit by the Commissioner.

Viewing the case as a whole, we cannot say that the trial court abused its discretion in awarding attorney's fees. It has found that $10,304.58 is a reasonable and just fee in view of all of the factors in the case. In arriving at this reasonable figure, we cannot say that it considered impermissible factors. This court will not substitute its judgment for that of the trial court.

The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, TEIGEN and VOGEL, JJ., concur.

VOGEL, J., was not a member of this Court at the time of submission of this appeal; he participated on the briefs filed in this case.